The Honorable Thomas T. Glover
Chapter 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| In re | No. 08-10844 |
|---|---|
| GEN CON LLC,<br>              Debtor. | DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION |

## I.     INTRODUCTION

On February 15, 2008, Gen Con, LLC, the debtor-in-possession in this Chapter 11 case ("Debtor" or "Gen Con"), filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the Western District of Washington at Seattle. A copy of the proposed Plan of Reorganization (the "Plan") is enclosed. All capitalized terms have the definitions assigned in the Plan.

As a creditor your vote is important. The Plan can be confirmed by the Court if it is accepted by the holders of two-thirds in amount and more than one-half in number of Claims in each impaired class of Claims voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that it accords fair and equitable treatment to the class or classes rejecting it.

The purpose of this statement is to provide the holders of Claims with adequate information about the Debtor and the Plan to make an informed judgment about the merits of

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 1

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 1 of 19

approving the Plan. Please read these materials carefully and return your ballot by the date indicated.

## II.     BACKGROUND

A.     <u>**The History and Organization of the Debtor**</u>.

The Gen Con brand was first established 41 years ago. Peter Adkison, the founder and former CEO of Wizards of the Coast, gaming veteran, and industry luminary, purchased Gen Con in May 2002, and formed Gen Con LLC, the Debtor in this Chapter 11 case.

Gen Con is a leading event management company for the hobby gaming industry. *Gen Con: The Best Four Days in Gaming*, commonly referred to as Indy, covers all major market segments and audiences. The company produces the largest consumer fantasy, sci-fi and adventure game convention in North America. Gen Con and its key event has received global attention through international media coverage, licensed events, and has also produced specialty programming like *Star Wars* Celebration operated under license with LucasFilm Ltd.

Gen Con acquired the U.S. gaming convention that had been previously held in Milwaukee, Wisconsin, as well as the national brand that had enjoyed licensed shows in the United Kingdom and Barcelona, Spain. In 2003, Gen Con moved the U.S. event to Indianapolis, Indiana. Its current operations include Gen Con Indy and licensees for European and Asia Pacific Gen Con shows.

Gen Con counts among its clients exhibitors such as Hasbro, Upper Deck Entertainment, Sony Online, Blizzard, NC Soft, and Eidos. In addition to exhibitors, Gen

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 2

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 2 of 19

Con has attracted a devoted following of conference attendees, and saw increased attendance of unique visitors of six percent this year, even after the Chapter 11 filing.

B.   **Financial Background.**

Although the Debtor's performance in recent years has resulted in substantial losses, it has been able to turn the trend around during the course of its bankruptcy, and 2008 will end with a net profit for the first time in several years.  In past years, the Debtor has ventured beyond the Indy conference to offer Star Wars and other shows, with generally negative consequences.  Financial results for the last three years for the consolidated operations of Gen Con are summarized below:

| In thousands | 2006 | 2007 | 2008 |
|---|---|---|---|
| Gross Revenue | $ 3,211 | $ 7,291 | $ 3,157 |
| COGS | $ | $ 1,438 | $ 38 |
| Gross Profit | $ 3,211 | $ 5,853 | $ 3,119 |
| Direct Show expenses | $ 2,286 | $ 5,337 | $ 1,218 |
| G & A (Sept-Aug) | $ 1,770 | $ 2,328 | $ 1,373 |
| Net Profit/Loss | $ (845) | $ (1,812) | $ 527 |

After confirmation, the Reorganized Debtor will operate only one convention each year, the Indy conference for which it is best known.  To fairly project the potential for future profitability, the Debtor has prepared an analysis of the historical results of Gen Con, taking into account only those items associated with the Indy convention.  The results of that analysis are attached as **Exhibit A**.

C.   **Pre-petition Payments and Transfers.**

Gen Con's owner, Peter Adkison, and his wife Melissa Reis, own two other entities, Hidden City Games LLC and Off the Grid LLC.  Gen Con had significant intercompany

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 3

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 3 of 19

transactions prior to the bankruptcy filing with each of these entities, as well as with the Adkisons personally. The transfers and financial impact of the intercompany transactions were properly disclosed on the Debtor's Statement of Financial Affairs filed in connection with this case. Moreover, in response to inquiries by the Creditors' Committee, the Debtor has provided detailed information about its finances and the various intercompany transactions since the filing. Disposition of any potential claims arising from the transfers is discussed further below.

D.  **Events Precipitating the Filing.**

Attempting to build on the success of its primary convention, Gen Con produced several additional conferences with varying degrees of success. In May 2007, Gen Con mounted a Star Wars show called Celebration IV in Los Angeles. The convention was unsuccessful for several reasons. First, the Star Wars brand supremacy had declined. Second, the southern California venue, and the attendant high prices of local accommodations, resulted in decreased ticket sales, particularly multi-day passes. Third, Lucas Film presented unanticipated competition by granting a license for sales of an action figure, cutting into Gen Con's sales of licensed goods. Ultimately, Celebration IV resulted in net losses to Gen Con of approximately $3 million, and Gen Con was unable to pay its vendors.

Under the leadership of Adrian Swartout and recognizing Peter Adkison's day-to-day involvement with Gen Con was waning, the company sought a buyer. A consultant, Edward Mohebi, was engaged to compile and distribute a sale document to prospective purchasers, and several parties expressed interest. Throughout the fall of 2007 and right up until filing the

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 4

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 4 of 19

bankruptcy, Gen Con was engaged in discussions with potential strategic purchasers, and spoke with most of its competitors to gauge their interest in buying the company. Although several did express what appeared to be serious interest, no formal offers were ever received.

By late 2007, a lawsuit was commenced by Pacific First Private Bank & Trust ("FPB"), the funder of Gen Con's vendor for temp labor and holder of accounts that remained unpaid. FPB commenced suit and filed a motion for prejudgment writ of attachment, which was resolved by a settlement under which FPB received periodic payments and obtained a Confession of Judgment. Payments to FPB ceased upon filing of the bankruptcy case, and it remains a creditor with a claim of approximately $75,000.

Shortly before its Chapter 11 filing, another suit was commenced by LucasFilm for payment of its outstanding account alleged to total $500,000 and the proceeds of an auction conducted by Gen Con at Celebration IV to benefit the Make-A-Wish Foundation. The Make-A-Wish Foundation is a nonprofit corporation that provides services to children with cancer and other life-threatening illnesses. Gen Con collected approximately $150,000 of net proceeds from the auction, and had failed to disburse the proceeds to Make-A-Wish. Facing this and potentially other litigation, Gen Con filed a bankruptcy petition on February 15, 2008.

**E.    Activities During Chapter 11 Case.**

The Debtor's primary goal during the Chapter 11 case was to stabilize operations at a reduced cost structure and to establish whether the Gen Con event could be operated profitably. At Mr. Adkison's direction, Gen Con appointed Ms. Swartout President and

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 5

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 5 of 19

delegated complete operating authority to her.  The Debtor sought to operate in its ordinary course of business as much as possible from its filing in February, through the end of its fiscal year on August 31.  As a result of Ms. Swartout's outstanding performance, the Debtor had its first profitable year since 2005, and is now confident that it can operate with sufficient profitability to fund the Plan.

An Unsecured Creditors' Committee was appointed by the Office of the United States Trustee on March 12, 2008.  The Committee is comprised of: Tom Des Brisay, Hasbro Receivables Funding, LLC, and Chairman John W. Jordan.  Throughout the case, the Debtor has cooperated with the Committee, meeting regularly with its financial analyst Miles Stover.  The Debtor believes the Committee supports its Plan.

On July 21, 2008, the Court entered an order establishing September 2, 2008 as the bar date for filing claims against the estate, and on October 1, 2008, the Debtor filed amendments to its Schedules and Statement of Financial Affairs.

**F.      Claims.**

Attached as **Exhibit B** is a table of the scheduled and filed Claims asserted against the Debtor.  Of the filed Claims, Debtor anticipates filing claim objections on several smaller claims for amounts that were all paid pre-petition.  The Debtor is attempting to reach agreement with LucasFilm as to the amount of its Claim, but will be forced to litigate with LucasFilm if the Claim cannot be reconciled.  Finally, the Debtor is attempting to resolve a tax claim with the Indiana Department of Revenue without litigation.

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 6

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 6 of 19

### III. DEBTOR'S ASSETS AND LIABILITIES

**A.     Assets.**

On the date of the bankruptcy filing, the Debtor's assets consist of several financial accounts, accounts receivable, intellectual property, furniture, fixtures, and equipment, and leasehold improvements.

In addition to the assets listed above, Debtor has 71,770 shares of Series A Preferred Stock in Hidden City Games with a book value of $215,310 which was not scheduled at the time of filing. However, Debtor has since amended its Schedule B to include these shares. The shares are restricted and may not be sold or transferred absent the approval of Hidden City Games' board. Moreover, Hidden City Games is a start-up technology company that has never been profitable, and to attribute any value to the shares would be highly speculative.

   **1.     Cash and Accounts.**

At the time of filing, Debtor had several different financial accounts held at JPMorgan Chase Bank, N.A., Bank of America, and Eastside Commercial Bank totaling approximately $303,000, which included a money market account containing $19,000 and undeposited funds of $16,000. The Debtor scheduled approximately $369,000 in accounts receivable.

   **2.     Furniture, Fixtures, and Equipment.**

At the time of filing, Debtor had office equipment, furniture, supplies and other miscellaneous business property worth approximately $32,000. In addition, the Debtor had computer software with a book value of approximately $152,000, including development costs.

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 7

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 7 of 19

B. **Liabilities.**

The Claims in this case have been discussed above, and are further delineated in relation to each class of claims in Section V. The Debtor's most significant obligations are to its vendors, the unsecured creditors in this case. In all, the Debtor has unsecured obligations of approximately $3.5 million.

## IV.   THE PLAN

A. **Summary.**

The following summary of the Debtor's Plan is intended to provide a context for understanding the remainder of this Disclosure Statement. The Plan should be read carefully and independently of this Disclosure Statement, and in the event of a discrepancy between the terms of the Disclosure Statement and the terms of the Plan, the Plan terms shall govern.

The Debtor's Plan provides a comprehensive program for taking the business out of Chapter 11. If the Plan is confirmed, unsecured creditors will maximize their return by sharing in the Reorganized Debtors' profitability through a stream of payments over time. Under the Plan, all non-insider creditors will be paid in full over the next five years.

B. **Operations and Governance.**

The Reorganized Debtor intends to continue to operate the business after confirmation under the continued leadership of Ms. Swartout. As set forth in the Plan, Ms. Swartout has agreed to remain with Gen Con in the capacity as Manager of the LLC and CEO, pursuant to the terms of an Employment Agreement attached to the Plan as Exhibit 1. Ms. Swartout's annual compensation will begin at $120,000 and will be adjusted annually. She will be

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 8

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 8 of 19

entitled to tuition reimbursement and other standard and customary benefits.  Ms. Swartout will also receive membership units in the Reorganized Debtor worth 20 percent of the company upon payment of the Class 4 and priority tax debt in 2012, or any earlier sale of the company.  In exchange, Ms. Swartout will agree to a non-compete provision.

Moreover, the Reorganized Debtor will be governed by an amended LLC Agreement, in the form attached to the Plan as Exhibit 3.  The amendments replace Mr. Adkison with Ms. Swartout in the position of manager of the manager-managed LLC.  In addition, under the amendments, an Advisory Board will be empowered to oversee any major activities of the company, and can block or approve any sale or other recapitalization of the company.  Any changes to executive compensation must also be approved by the Advisory Board.  The Advisory Board will be comprised of the current members of the Creditors' Committee or their assignees, and will meet periodically with the Reorganized Debtor's management to monitor its financial condition and its performance under the Plan.

The Reorganized Debtor will be responsible for performance of the Plan and shall disburse funds pursuant to Article 10 of the Plan.  Administrative trade creditor expenses and trade payables incurred in the ordinary course of the Gen Con's business will continue to be paid in the ordinary course of business as they come due.  No payments will be made to LLC members on account of their membership interests until all Class 4 and Priority Tax Claims have been paid in full.  Payments under the Plan will start on the Effective Date of the Plan and continue until all Allowed Claims are paid in full, at which time the Plan will terminate.

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 9

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 9 of 19

The Reorganized Debtor shall disburse the Plan payments from funds currently on hand and from future profits. In April and October each year, the Reorganized Debtor will distribute $394,000 on a pro rata basis, and will accompany such payments with financial reporting as further described below, until all creditors are paid in full.

## V.  TREATMENT OF CREDITORS UNDER THE PLAN

A.  **Summary**.

The Plan provides that Gen Con will fund payments with the profits from Gen Con's successful 2008 show in Indianapolis and from future profits of Gen Con events.

B.  **Classification of Claims and Interest**.

Claims against the Debtor are classified as follows:

Class 1:  Allowed Priority Nontax Claims.

Class 2:  Allowed Administrative Convenience Claims.

Class 3:  Allowed Claim of Make-A-Wish Foundation.

Class 4:  Allowed Unsecured Claims, excluding insider claims.

Class 5:  Allowed Subordinated Claims.

B.  **Treatment of Claims and Interest**.

The Bankruptcy Code establishes the priority of distributions to Creditors with respect to assets of the Debtor. The order of distribution set forth in the Plan (which is described below) meets the requirements of the Bankruptcy Code:

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 10

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 10 of 19

### 1. Administrative Claims.

Expenses and fees incurred in the administration of the estate are anticipated to be approximately $130,000 (less a $50,000 retainer being held by counsel for the Debtor) and will consist primarily of the professional fees of Debtor's counsel and the financial advisor for the Unsecured Creditors' Committee, and U.S. Trustee fees. Professionals cannot be paid until their fees have been approved by the Bankruptcy Court.

### 2. Priority Tax Claims.

Claims for pre-petition federal, state, and local taxes have the next priority. Priority Tax Claims total approximately $275,000 and will be paid over the life of the Plan, along with interest at the rate of five percent (5%) per annum. The Debtor estimates that the Claims will be paid in full.

### 3. Class 1: Allowed Priority Non-Tax Claims.

The Debtor is not aware of any priority claims other than tax claims.

### 4. Class 2: Allowed Unsecured Claims under $1,000.

Class 2 Claims will be paid on the Effective Date. The Debtor estimates that Class 2 Claims total $650. The Debtor believes these Claims will be paid in full. This class is impaired.

### 5. Class 3: Allowed Claim of Make-A-Wish Foundation.

As discussed above, Gen Con held an auction to benefit Make-A-Wish as part of its Star Wars Celebration IV convention in Los Angeles. The auction sold items donated by LucasFilm from its collection of movie memorabilia, and net proceeds were raised, after

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 11

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 11 of 19

auction expenses, of almost $150,000. Gen Con has held these funds in trust, and desires to make immediate payment of this obligation. Thus, the Class 3 Claim will be paid on the Effective Date. The Debtor estimates that Class 3 Claim totals approximately $148,500. The Debtor will pay this Claim in full. This class is impaired.

6.  **Class 4: Allowed Unsecured Claims.**

Class 4 Claims will be paid in full over the life of the Plan with interest at the rate of five percent (5%) per annum. Payments will be made semiannually in April and October each year. Each Class 4 Creditor will receive its portion, Pro Rata among Class 4 and the unscheduled Priority Tax Claims, of the semi-annual payment of $394,000 established under the Plan, to be applied first to accrued interest and then to reduce the principal balance. The Debtor estimates that Class 4 Claims total approximately $2,700,000.

The Debtor will pay these Claims in full. With each distribution payment, the Reorganized Debtor will provide summary reporting of the total distribution made, its cash position, and operating results. This class is impaired.

7.  **Class 5: Allowed Subordinated Claims.**

Class 5 consists of the Claims of Peter Adkison and Hidden City Games, scheduled by the Debtor in the respective amounts of $315,385 and $125,000. In exchange for waiving any potential Avoidance Actions against them, the Class 5 Creditors will agree to subordinate their claims to the general unsecured claims. Class 5 Claims will therefore receive payments only after Class 4 has been paid in full, likely October 2012. Class 5 will thereafter receive Pro Rata distributions semiannually, until fully paid.

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 12

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 12 of 19

C. **Executory Contracts and Leases**.

The Debtor's lease for the premises of its business expires in August 2010, with an option to extend the lease for the three years immediately following the lease's expiration. Gen Con has recently been able to make arrangements to relocate within its same office building into smaller space at a lower price, to accommodate its reduced need for space. The move results in savings of approximately $2,000 per month. The Debtor will assume its previous lease and assign it to Hidden City Games LLC, and will concurrently accept assignment of the lease currently belonging to Off the Grid LLC, moving from suite 130 to suite 100 in the same building. The agreement with the Debtor's landlord effectuating this transaction is attached as Exhibit 1 to the Plan.

The Debtor has also leased a number of servers and accessories from Dell Financial Services, LP, which expire in 2010, and which will all be assumed under the Plan. Further, hotel leases and facility leases will also be assumed. The Debtor does not believe any cure payments will be required to assume these leases.

Finally, the Debtor previously leased server space and obtained internet access from Semaphore Corporation. The Debtor intended to continue to use Semaphore's services throughout the bankruptcy and made an adequate assurance payment of $14,647.91 to Semaphore pursuant to an order of the bankruptcy court. However, in June of 2008, the Debtor decided to switch service providers from Semaphore to MZIMA and terminated its agreements with Semaphore. Semaphore may have a claim for damages against the Debtor

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 13

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 13 of 19

for, at maximum, $35,000 dollars. After applying the adequate assurance deposit, the Debtor's outstanding liability for the termination is estimated to be no more than $20,000.

## VII. FEASIBILITY ANALYSIS

The Debtor has worked diligently since the completion of Gen Con to close its fiscal year and finalize its financial projections. The Debtor has prepared financial projections that indicate it will be able to continue to operate profitably and will generate sufficient excess cash flow to make all the payments called for under the Plan. A copy of the Debtor's operating projections is attached as **Exhibit C**. Using those operating projections, the Debtor has further estimated its monthly cash flow position, attached as **Exhibit D**. Under the circumstances, the Debtor believes that there are no impediments to implementation of the Plan. The Debtor, therefore, believes that the Plan is feasible.

## VIII. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Certain federal income tax consequences of the Plan are described below. The tax consequences are subject to uncertainties, including the taxpayer status of particular creditors, methods of accounting, and prior action taken by creditors with respect to their claims. Creditors are therefore advised to consult with their tax advisers regarding the individual tax consequences of the Plan.

In general, a creditor using the accrual method of accounting will recognize a gain or loss on the exchange to the extent that the difference between the cash received is greater or less than the creditor's basis in the claim exchanged. A creditor using the cash method of accounting will recognize a gain or loss on the exchange as above, except to the extent that

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 14

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 14 of 19

the cash exceeds the original amount of the original claim.  In that case, the excess may be treated as income insofar as interest accrued on the claim and was not previously reported as income by the creditor.

**THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES OF THE PLAN TO THE HOLDERS OF CLAIMS ARE COMPLEX AND WILL VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH CREDITOR. HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR TAX ADVISORS WITH SPECIFIC REFERENCE TO THE TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THEIR CLAIM.**

The debtor is an LLC, and has no federal income tax obligations.  Under this plan, the debtor will continue to furnish a K-1 to Mr. Adkison, its sole member.

## IX.     ALTERNATIVES AND LIQUIDATION

Gen Con believes that the above proposal is in the best interest of Creditors.  If the Plan is not adopted, Gen Con would most likely be forced to convert to a Chapter 7 and liquidate its assets in a more distressed situation.  The Debtor has prepared a summary of the assets to be liquidated and the claims to be paid under a hypothetical Chapter 7 case, attached as **Exhibit E**.  The liquidation analysis assumes that assets would be sold at distressed prices, and that certain assets, such as the Hidden City Games stock and the leasehold improvements, would be worthless under that scenario.

Gen Con believes that distributions to each class of Claims under the Plan will be at least as large as any distributions that might be received if the case were converted to one

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 15

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 15 of 19

under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, the general rule is that a debtor's assets are liquidated by a trustee.  The Chapter 7 trustee is compensated partially on the basis of a commission, and may have additional professional fees as well.  Next, the administrative expenses of the Chapter 11 case would have to be paid, including reimbursement of the exhibitor and customer deposits paid for 2009 and other current accounts payable.  Priority claims would be paid in full, and the Debtor's liquidation analysis estimates that liquidation would result in a payment of seven percent (7%) to general unsecured creditors.  Under the proposed Plan, in contrast, the unsecured creditors will receive full payment of the Claims plus interest, and thus will certainly receive as much as they would in a Chapter 7.

## X.  CONFIRMATION OF PLAN

A.  **Voting Procedures.**

If you are a holder of a Claim in a class which is impaired a ballot to be used for voting your acceptance or rejection of the Plan is included with this Disclosure Statement.  If you are a holder of a Claim in a class which is unimpaired, you will not receive a ballot because under Bankruptcy Code § 1126(f) you are conclusively presumed to have accepted the Plan.  Holders of Claims and Interests should read the instructions carefully, complete, date and sign the ballot.  This ballot must be mailed to Mr. Chris Dale, Crocker Kuno PLLC, 720 Olive Way, Suite 1000, Seattle, Washington, 98101.  IN ORDER TO BE TABULATED, YOUR BALLOT MUST BE RECEIVED AT THE INDICATED ADDRESS BY **NOT LATER THAN 5:00 P.M.** PACIFIC STANDARD TIME, DECEMBER 30, 2008.  FAILURE TO VOTE OR A VOTE TO REJECT

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 16

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 16 of 19

THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number and at least two-thirds in amount of the voting claims of a Class vote to accept the Plan, such Class will be deemed to have accepted the Plan. If more than two-thirds in amount of Allowed Interests in a Class accepts the Plan, such Class will be deemed to have accepted the Plan. All unimpaired Classes are deemed to have accepted the Plan. For purposes of determining whether a Class has accepted or rejected the Plan, only the votes of those claimants who have timely returned their ballots will be considered.

B. **Hearing on Confirmation.**

The hearing on confirmation of the Plan has been set for January 9, 2009, at 9:30 a.m. before the Honorable Thomas T. Glover, U.S. Bankruptcy Court, 700 Stewart Street, Courtroom 7106, Seattle, Washington. The Bankruptcy Court will confirm the Plan at the hearing only if certain requirements, as set forth in 11 U.S.C. § 1129 and described below, are satisfied.

C. **Best Interests of Creditors.**

If any holder of a Claim does not accept the Plan, the Court must determine that each holder of a Claim will receive or retain under the Plan, on account of that Creditor's Claim property having a value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date. This is commonly referred to as the "best interests of creditors" standard. As discussed in Section IX of this Disclosure Statement, Unsecured

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 17

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 17 of 19

Creditors are getting paid in full.  Accordingly, the Debtor believes that the Plan satisfies this test.

**D.     Feasibility.**

The Debtor must also establish that confirmation of the Plan is not likely to be followed by the reorganized entity's liquidation, or the need for further financial reorganization.  Debtor believes that the Plan is feasible and that the Bankruptcy Court will so find, but a Bankruptcy Court finding of feasibility does not guarantee that the Debtor will successfully complete, or pay all of its obligations under, the Plan.  The proposed Plan is a reorganizing plan, and such plans may be confirmed if the remaining requirements of the Bankruptcy Code are satisfied.

**E.     Effect of Confirmation.**

Confirmation of the Plan shall operate on the Effective Date of the Plan as a discharge of Debtor from all claims and indebtedness that arose before the Effective Date of the Plan, except for those debts or obligations which are expressly created or assumed by Debtor under the terms of the Plan as such claims existed on the confirmation date, and except for certain tax claims.

After Confirmation, all property of the Debtor's estate shall be free and clear of all claims and interests of creditors except as otherwise provided in the Plan or the order of the Bankruptcy Court confirming the Plan.  The provisions of the Plan shall bind the Debtor and all other parties in interest, including any creditor of the Debtor, whether or not such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 18

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 18 of 19

## XI. CONCLUSION

Gen Con has endeavored to obtain the best possible outcome for its creditors in this case, and believes that the Plan described above is fair and equitable for all concerned. We urge you to accept the Plan, and return your Ballot promptly.

DATED this 17th day of October, 2008.

CROCKER KUNO PLLC

By _____
Shelly Crocker, WSBA #21232
Attorneys for Debtor

DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION - 19

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 93    Filed 10/17/08    Ent. 10/17/08 16:37:12    Pg. 19 of 19