# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT dated as of September 18th, 2008 (the "Agreement") is made and entered into by and between Gen Con LLC, a Washington corporation (the "Employer"), and Adrian Swartout, an individual residing at 4403 51st Ave S, Seattle, WA 98118 (the "Employee").

<u>W</u> <u>I</u> <u>T</u> <u>N</u> <u>E</u> <u>S</u> <u>S</u> <u>E</u> <u>T</u> <u>H</u>:

WHEREAS, the Employee has been employed by the Employer for a significant period of time; and

WHEREAS, Employee has remained faithfully under the employ of Employer during Employer's petition for Chapter 11 protection in the U.S. Bankruptcy Court for the Western District of Washington (the "Reorganization") and Employer wishes to provided added incentive for Employee's continued service; and

WHEREAS the Employee and Employer desire to enter into this Agreement confirming the terms and conditions upon which the Employee will henceforth continue to be employed by the Employer;

NOW, THEREFORE, the Employer and the Employee agree as follows:

**Section 1.  Employment and Term.**

1.1.  <u>Duties and Term</u>.  The Employer agrees to employ the Employee and the Employee agrees to faithfully and diligently render her full-time services to the best of her abilities to the Employer, as its President, for the period commencing with the date of this Agreement until such time as the U.S. Bankruptcy Court for the Western District of Washington ("Court") has approved Employer's Reorganization (such date shall be termed Employer's "Reemergence") unless employment is sooner terminated as provided herein.  Upon Reemergence, Employee shall be promoted to the office of Chief Executive Officer unless employment is sooner terminated as provided herein.  In such capacity, the Employee shall be responsible for developing, organizing, and assuring execution of the strategic and operational direction of Employer and such other activities, responsibilities and duties as may be reasonably assigned by the Company's Board of Directors.  The term of this Agreement shall be until January 31, 2013.  The Employee's responsibilities include ensuring that the Employer (through the Employee or otherwise) does not (a) allow any employees or other workers (including the Employee) to work if the Employer does not have funds to pay such individuals, (b) make commitments for payments (such as a partial or full salary deferral or severance pay) that the Employer does not have the funds to meet, and (c) enter into any agreements with employees or other workers (including the Employee) for deferred compensation that are not in full compliance with applicable wage and hour laws, in writing, signed by all appropriate parties (including the employee or worker and the Company's Board of Directors), and inclusive of details regarding the precise circumstances under which the employee or worker can demand payment of the compensation deferred.

1.2.  <u>Location and Travel</u>.  The Employee shall perform the services required of her hereunder in the vicinity of Seattle, Washington, it being understood that in no event shall her principal office be located more than fifty (50) miles from her current principal residence without the Employee's consent, such consent not to be unreasonably withheld.  Notwithstanding the

foregoing, the Employee shall undertake such travel as may be required in the performance of her duties hereunder, *provided* that, in no event shall the Employee be required to travel outside the United States on a basis that is more frequent and of greater duration than had been required by her duties for the Employer during calendar year 2008.

**Section 2.      Compensation.**

    2.1.    <u>Base Salary</u>.  The Employer agrees to pay to the Employee, and the Employee agrees to accept from the Employer, annual compensation at the rate of $120,000.00US per annum, payable in accordance with the Employer's standard payroll policies, and subject to annual review and adjustments thereto.

    2.2.    <u>Employee Benefits</u>.  The Employee shall be entitled to participate on the same basis, and subject to the same qualifications, as other employees of the Employer, pursuant to the then prevailing policies of the Employer, in any vacation, pension, 401(k), long-term disability, group life insurance, group medical, health care, hospitalization, and other fringe benefit plans in effect from time to time with respect to employees of the Employer.

    2.3.    <u>Business Expenses</u>.  The Employer agrees that it will reimburse the Employee for all reasonable business expenses incurred by him during the term of the Employee's employment hereunder in connection with the performance of services hereunder and accounted for to the Employer in accordance with applicable tax laws and the Employer's policies relating to reimbursement of expenses for its executives of comparable standing.

    2.4.    <u>Vacation</u>.  For the purpose of determining Employee's vacation time for the term of this Agreement, the starting date for Employee's employment at the Company shall be considered January 1, 2005.  Upon the termination of Employee's employment with the Company, accrued and unused vacation shall be paid out pursuant to Company policy and procedure.

    2.5    <u>Employer Ownership Grant</u>.  Upon entry into this Agreement, the Company grants to Employee Twenty (20.0%) of the voting and profits interests in the Company ("Membership Interests") including, but not limited to distributions pursuant to Section 9.2 of the Limited Liability Company Agreement of the Company dated May 15, 2002 as amended.  The Membership Interests shall be subject to Reverse Vesting and future dilution.  The term "Reverse Vesting" shall mean that such Membership Interests are subject to divestiture from Employee in favor of the Company in the event that Employee is terminated pursuant to Section 4.2, but that the percentage of Membership Interests that the Company shall have the right to recover in the event of such termination shall decrease as follows:

| If Sec. 4.2 Termination Occurs on or Before: | Percent of Class A Membership Units that Swartout Transfers Back to Company: |
| --- | --- |
| December 1, 2009 | 75% |
| December 1, 2010 | 50% |
| December 1, 2011 | 25% |

Notwithstanding the foregoing, in the event of a merger, reverse merger, sale of substantially all

the assets of the Company, or a change in control of the Company, the Company shall cease to have the right to recover any such Membership Interests from Employee. It is stipulated that, upon entry into this Agreement, the Company ownership shall be as follows: (i) Forty Percent (40.0%) of the Membership Interests shall be owned by Peter D. Adkison; (ii) Forty Percent (40.0%) of the Membership Interests shall be owned by Melissa Reis; and (iii) Twenty Percent (20.0%) of the Membership Interests shall be owned by Employee subject to Reverse Vesting. In light of the Reorganization, Employee's Membership Interests shall be deemed to have a fair market value of One Hundred Dollars ($100.00US).

  2.6 <u>Tuition Reimbursement</u>. Employee will be entitled to participate in Employer's tuition reimbursement program, which, at present will reimburse one hundred percent of the tuition cost for successful completion of any course of study directly tied to Employee's duties (including obtaining a Bachelor of Arts and Masters of Business Administration) from an accredited university. Reimbursement will be made within thirty (30) days following the end of any scholastic period (such as a term or semester). For such period, Employer will reimburse one hundred percent of the tuition cost for each class in which Employee can satisfactorily demonstrate that she has received at least a 2.5 grade point average (based on a maximum grade of 4.0) in such class.

**Section 3.** **<u>Restrictive Covenants and Confidentiality</u>.**

  3.1. <u>Noncompetition</u>. The Employee agrees that during the term of her employment by the Employer and for a period of six (6) months following the termination of such employment, the Employee shall not in any country, state or other jurisdiction in which the Employer, now or hereafter engages in business, directly or indirectly:

  (a) engage in the business of operating, organizing, marketing, conducting, or licensing, conventions or trade shows within the games or interactive entertainment industries; or

  (b) become interested in or otherwise become associated with any person engaged in any activity described in clause (a) above in any capacity, including, without limitation, as a shareholder, partner, principal, employee, officer, director, agent or consultant, *provided* that the Employee may own, directly or indirectly, solely as an investment, securities of any person traded on any national securities exchange or other established trading market if the Employee is not a controlling person of, or a member of a group (other than as a limited partner) which controls, such person and the Employee does not, directly or indirectly, own 5% or more of any class of securities of such person.

  3.2. <u>Intellectual Property</u>. The Employee agrees that all ideas, suggestions, discoveries, inventions, patents, copyrights, copyrightable materials, software programs and related code, secret processes, formulae, trademarks, trade secrets and the like created, discovered or developed by the Employee (other than any such item which is not related to any business of the Employer, or any of Employer's respective affiliates) at any time during the Employee's employment with the Company, whether or not in the course of her employment, shall be the exclusive property of the Employer, and the Employee agrees to execute such instruments of transfer, assignment, conveyance and confirmation and such other documents as may reasonably be requested by the Employer to transfer, assign, convey, confirm and perfect in the Employer all

legally protectable rights in such ideas, suggestions, discoveries, inventions, patents, copyrights, copyrightable materials, secret processes, formulae, trademarks, trade secrets and the like.

      3.2.1. <u>Inventions</u>.  Without limiting the foregoing, the Employee agrees that all work product (*i.e.*, any convention management system, software, invention, discovery, concept or idea related to conventions, games, game tournaments, special events, publications, etc.) and technologies (collectively, "Work Product") invented or made by the Employee at any time during the Employee's employment with the Company shall belong to the Employer, *provided* that such Work Product grew out of the Employee's work with the Employer, or any of Employer's respective affiliates or are related in any manner to any business (commercial or experimental) of the Employer, or any of Employer's respective affiliates or are conceived or made on the Employer's time or with the use of the Employer's facilities or materials.  The Employee shall (<u>a</u>) promptly disclose any such Work Product to the Employer;  (<u>b</u>) assign to the Employer, without additional compensation, all patent and other rights to each and all such Work Product for the United States and foreign countries; (<u>c</u>) sign all papers necessary to carry out the foregoing; and (<u>d</u>) give testimony in support of her inventorship.  The Employee and Employer acknowledge that the assignment of rights to inventions does not apply to an invention for which none of the Employer's equipment, supplies, facilities, personnel, confidential information, trade secret information or other resources were used, and which were developed entirely on the Employee's own time, *unless* the invention relates directly to the business of the Employer or the Employer's actual or demonstrably anticipated research and development, or the invention is the result of work performed by the Employee for the Employer.

      3.2.2. <u>Post-Termination Applications</u>.  Any Work Product described in a patent application or disclosed to third parties, directly or indirectly, by the Employee within six (6) months after the termination of her employment by the Employer shall be presumed to have been conceived or made during the period of the Employee's employment by the Employer.  The Employee has the burden of proof in proving the contrary and may, by a preponderance of the evidence, rebut the presumption under this Section 4.2.2.

      3.2.3. <u>Sole Property of Employer</u>.  The Employer shall be the sole owner of all the products and proceeds of the Employee's services hereunder, including, but not limited to, all materials, ideas, concepts, formats, suggestions, developments, arrangements, packages, programs and other intellectual properties that the Employee may acquire, obtain, develop or create in connection with and at any time during the Employee's employment with the Company, free and clear of any claims by the Employee (or anyone claiming on behalf of the Employee) of any kind or character whatsoever.

      3.3. <u>Confidential Information</u>.  The Employee will regard and preserve as confidential all information pertaining to the business of the Employer, or any of Employer's respective affiliates that may be obtained by him from any source as a result of her employment hereunder and the Employee will not, without written authority from the Employer or as may be compelled pursuant to a duly issued judicial or administrative subpoena, disclose to any person, or use for her own benefit, during her employment or thereafter, any such information relating to design, methods, processes, apparatus, programs or other materials conceived, designed, created or heretofore or hereafter used or developed by the Employer, or any of Employer's respective affiliates, or relating to its or their customers, customer lists, pricing and pricing methods, sourcing or other supplier related information, or other information that is the property of the Employer, or any of Employer's respective affiliates, customers, agents, suppliers or contractors, all such information being considered to be or to relate to trade secrets and to be confidential information of the Employer, or any of Employer's respective affiliates.  This Section 4.3 shall

not apply to any information which is or becomes part of the public domain other than as a result of a breach of this Agreement by the Employee or disclosure by any other person subject to a duty of confidentiality to or a confidentiality agreement with the Employer, or any of Employer's respective affiliates.

3.4. <u>Nonsolicitation; Non-hire of Employees</u>. The Employee agrees that, other than in her capacity as an officer and employee of the Employer, she will not solicit or in any manner encourage employees of, or consultants to, the Employer, or any of Employer's respective affiliates to leave the employ of, or stop rendering services to, the Employer, or any of Employer's respective affiliates. The Employee also agrees that for a period of one (1) year following the termination of her employment hereunder, for whatever reason, she will not hire for himself or for any third party any person who is, or within the immediately preceding six (6) month period was, an employee of the Employer, or any of Employer's respective affiliates.

3.5. <u>Remedies</u>. (a) If the Employee breaches, or engages in conduct that constitutes an anticipatory breach of any of the provisions of this Section 4 (the "Restrictive Covenants"), the Employer shall have the following rights and remedies, each of which shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Employer under law or in equity:

(i) The right and remedy to have the Restrictive Covenants specifically enforced by any court of competent jurisdiction, it being agreed that any breach, or anticipatory breach, of the Restrictive Covenants would cause irreparable injury to the Employer and that money damages would not provide an adequate remedy to the Employer.

(ii) The right and remedy to require the Employee to account for and to pay over to the Employer all compensation, profits, monies, accruals, increments or other benefits derived or received by the Employee, directly or indirectly, as the result of or in any way associated with any conduct constituting a breach of the Restrictive Covenants, including, without limitation, any amounts related to the direct or indirect use, license or sale of any Work Product.

(b) The Employee acknowledges and agrees that the Restrictive Covenants are reasonable and valid in geographical and temporal scope and in all other respects. The Employee acknowledges that the Employer is engaged in world-wide business activities related to the design, manufacture and distribution of games and other consumer products and activities, including Principal Products, and internet activities relating to the foregoing, and that the Restrictive Covenants could preclude the Employee from engaging in such activities that are competitive with the Employer in each jurisdiction in the world.

(c) The Employee agrees and acknowledges that the intent of the parties is to enforce the Restrictive Covenants to the maximum extent permissible at law. If a court of competent jurisdiction determines that any of the Restrictive Covenants, or any part thereof, is invalid or unenforceable, the remainder of the Restrictive Covenants shall not thereby be affected and shall be given full effect, without regard to any such invalid portion(s). If a court of competent jurisdiction determines that any of the Restrictive Covenants, or any part thereof, is unenforceable because of the duration or geographic scope of any such provision, such court shall have the power (and is hereby requested by the parties) to reduce the duration or scope of such provision, as the case may be, to the extent necessary to allow such provision to be enforceable.

3.6. <u>Survival of Restrictive Covenants</u>.  This Section 4 shall survive the termination of the Employee's employment pursuant to this Agreement regardless of the reason for such termination.

**Section 4.    Termination.**

4.1. <u>Death</u>.  This Agreement and the Employee's employment hereunder shall terminate, and all payments hereunder shall cease, except to the extent accrued, upon the death of the Employee.

4.2. <u>Disability and Cause</u>.  The Employer shall have the right to terminate this Agreement and the Employee's employment hereunder:

(a)    if the Employee shall become "disabled," as such term is defined in the Employer's disability insurance policies in effect from time to time, and shall therefore be unable to perform the services required of him hereunder for more than three consecutive months or six (6) months in any twelve (12) month period during the term hereof; the Employer shall have the right to terminate this Agreement as of the last day of the month following the month in which the Employer shall have given written notice to the Employee of its intention to terminate this Agreement because of such disability; and

(b)    for "Cause"; for this purpose, the Employer shall be deemed to have Cause upon the occurrence of one or more of the following events:

(i)   any willful misconduct on the part of the Employee that has a materially adverse effect on the Employer;

(ii)  the Employee's engaging in conduct which could reasonably result in her conviction of a felony or a crime against the Employer or involving substance abuse, fraud or moral turpitude, or which would materially compromise the Employer's reputation, as determined in good faith by a written resolution duly adopted by the affirmative vote of not less than two-thirds of the Board; or

(iii) unreasonable refusal by the Employee to perform the duties and responsibilities of her position in any material respect.

No action, or failure to act, shall be considered "willful" if it is done by Employee in good faith and with reasonable belief that her action or omission was in the best interests of the Employer.

4.3. <u>Termination by the Employer Without Cause.</u>  In addition to its rights under Section 5.2 hereof, the Employer may at any time by written notice to the Employee terminate her employment with the Employer hereunder for any reason or without reason.

4.4. <u>Compensation Payable Upon Termination</u>.

4.4.1. <u>Termination Pursuant to Section 4.1 or 4.2; Termination by the Employee for Any Reason</u>.  In the event of (i) the Employee's death, (ii) the termination by the Employer of the Employee's employment hereunder pursuant to Section 5.2 hereof or (iii) any termination by the Employee of her employment hereunder for any reason whatsoever, unless such termination

would amount to termination for Good Reason (as defined below), the Employer shall not be required to pay the Employee any compensation for any period after such termination.

        4.4.2. <u>Termination Pursuant to Section 4.3; Termination by Employee for Good Reason</u>. In the event of (a) the termination of the Employee's employment by the Employer pursuant to Section 4.3 or termination by the Employee of the Employee's employment hereunder for Good Reason and (b) satisfaction of the conditions specified in Section 4.4.3, the Employer shall pay the Employee her base salary at the same time and in the same amount as it would have paid to the Employee if she had continued to be employed hereunder for a period of six (6) months. The payments under this Section 4.4.2 shall be made in consideration of the Employee's compliance with the restrictive covenants and other requirements of Section 4. For the purposes herein, "Good Reason" means, without Employee's express written consent:

        (i) the material limitation or diminution of Employee's responsibilities, inconsistent with Employee's duties and responsibilities described in Section 1.1;

        (ii) failure by the Employer to pay, or reduction by the Employer of, Employee's annual base salary, as referenced in Section 2.1;

        (iii) the relocation of the principal place of Employee's employment to a location that is more than fifty (50) miles further from her current principal residence; or

        (iv) the Employer's failure to cure, within thirty (30) days of receipt of written notice thereof, the breach of any material provision of this Agreement by the Employer, including, without limitation, failure by the Employer to bind any successor to the Employer to the terms and provisions of this Agreement.

        4.4.3 <u>Conditions to Receipt of Section 4.4.2 Consideration</u>. To receive the consideration specified in Section 4.4.3, the following conditions must be satisfied: (a) the Employee must sign and return a full waiver and release of any and all claims against the Gen Con Advisory Committee members and the Employee must not revoke the release, and (b) the Employer must have funds available to pay the required consideration.

        4.4.4. <u>Amounts Payable Under Employee Benefit Plans and Policies</u>. Regardless of whether the Employee is entitled to any payments under the foregoing subsections of this Section 4.4, nothing in this Agreement shall in any way affect the compensation or benefits, if any, payable to the Employee under the plans and policies described in Section 2.2 that are applicable to the Employee, *provided* that, in no event shall the Employee be entitled to receive any executive salary continuance or other severance or dismissal pay under any such plan or policy in addition to the amounts payable to Employee under subsection 4.4.2.

**Section 5.**    **Miscellaneous.**

        5.1. <u>Insurance</u>. The Employer may secure life, health, accident or other insurance covering the Employee, the cost of which will be borne by the Employer. Such insurance (and all proceeds therefrom) shall be for the sole benefit of the Employer. The Employee shall assist in the procurement of such insurance by submitting to any examinations and tests as may be reasonably required and by preparing, signing and delivering such applications and other documents as may be reasonably required.

5.2. <u>Severability</u>.  If any section, subsection or other provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable for any reason, such section, subsection or provision shall be deemed to be severable and this Agreement shall otherwise continue in full force and effect.

5.3. <u>Notice</u>.  Any notices or other communications hereunder shall be in writing and sent by registered or certified mail; if intended for the Employer, addressed to it, Peter Adkison, c/o Gen Con LLC, 120 Lakeside Ave., Suite 100, Seattle, WA 98122, or at such other address of which the Employer shall have given notice to the Employee in the manner herein provided; and if intended for the Employee, addressed to him at the address set forth on the first page of this Agreement or at such other address of which the Employee shall have given notice to the Employer in the manner herein provided.

5.4. <u>Successors and Assigns</u>.  This Agreement shall be binding upon the Employer, its successors or assigns and any corporation which acquires, by merger or otherwise, all or substantially all of its assets, and shall inure to the benefit of the Employee and her legal representatives.  The Employer may at any time assign this Agreement to any of its affiliates, so long as the Employer guarantees the payment by such affiliate of the obligations of the Employer to the Employee assumed by such affiliate pursuant to such assignment.  This Agreement shall not be assignable by the Employee.

5.5. <u>Amendments</u>.  No modification, amendment or waiver of any of the provisions of this Agreement shall be effective unless in writing and signed by both parties hereto.

5.6. <u>No Waiver By Conduct</u>.  The failure to enforce at any time any of the provisions of this Agreement or the failure to require at any time performance of any of the provisions of this Agreement shall in no way be construed to be a waiver of such provisions or to affect either the validity of this Agreement or any part hereof, or the right thereafter to enforce each and every such provision in accordance with the terms of this Agreement.

5.7. <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding of the parties hereto with respect to the Employee's employment and her compensation therefor and supersedes all other prior agreements, understandings, statements or representations, whether oral or written or express or implied, with respect to the subject matter hereof.

5.8. <u>Effectiveness of this Agreement</u>.  The obligations of the Employee and the Employer hereunder are subject to the occurrence of the Closing.  This Agreement shall terminate without obligation of either party upon the termination of the Merger Agreement pursuant to its terms.

5.9. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be considered an original but both of which together shall constitute one and the same agreement.

5.10. <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Washington.

5.11. <u>Headings</u>.  Headings used in the sections and subsections of this Agreement are for convenience of reference only and shall not be deemed to affect the meaning or interpretation of any provision hereof.

IN WITNESS WHEREOF, the parties hereto have executed this Employment Agreement the day and year first above written.

_____
Adrian Swartout, Employee

**Gen Con LLC**

By: _____  _____
    Peter D. Adkison                Melissa Reis
    Chief Executive Officer      Co-Owner, Gen Con, LLC