The Honorable Thomas T. Glover
Chapter: 11
Hearing Location: Seattle
Hearing Date: January 9, 2009
Hearing Time: 9:30 a.m.
Response Date: December 30, 2008

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In Re:<br><br>GEN CON LLC,<br><br>Debtor. | Case No. 08-10844-TTG<br><br>**OBJECTION TO THE CONFIRMATION OF THE DEBTORS AMENDED PLAN OF ORGANIZATION** |

Comes Now Gen Con Acquisition LLC, a Delaware limited liability corporation ("Acquisition"), potential purchaser of the above captioned debtor's ("Debtor") assets and creditor by purchase of the claim of LGC Associates LLC (Claim No. 6) (See Docket No. 122, Notice of Transfer of Claim) and files this Objection ("Objection") to the Confirmation of the Debtor's Amended Plan of Reorganization ("Plan"). In Support of this Objection, Acquisition states as follows:

I. **INTRODUCTION**

1. Acquisition is an entity which since November of 2008 has attempted to enter into negotiations with the Debtor (see final form offer letter attached hereto as **Exhibit A**).[1] Acquisition has offered to acquire the Debtor's assets under a plan which:

---

[1] The Offer initially provided for new money rather than use of the debtor's operating funds to pay creditors and was improved over several weeks to offer a 70% instant payoff and a escrow deposit of $900,000. No amount of improvement attracted negotiations from the committee or the debtor in possession.

OBJECTION TO CONFIRMATION – 1

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 1 of 17

- Guarantees, by funds deposited by Acquisition in the undersigned's Escrow Account, the payment in full of all allowed administrative expenses and priority claims;

- Guarantees, by funds deposited by Acquisition in the undersigned's Escrow Account, the holders of all allowed unsecured claims the option of either an **immediate guaranteed payment of 70% of their claims** or a partially guaranteed payment, over time, of 100% of their claims plus interest (see attached Exhibit A);

- Provides for the retention of all operation capital currently in the Debtor to ensure funding of the future operations and conventions;

- Preserves of all of the Debtor's claims and causes of action ("Debtor Claims") against insiders and or associates and affiliates of insiders ("Insider Defendants") to further ensure payment of creditors' claims; and

- Waives Debtor Claims against third party trade vendors and other third party unsecured creditors who are not Insider Defendants.

2. The Debtor has consistently refused to even discuss Acquisition offers and instead has continued to press its Plan which:

- Provides no new capital to the Debtor (Section 10.1 of the Plan);

- Forces the Debtor to use its cash on hard to pay administrative and priority claims, greatly reducing needed operating capital (Section 10.4 of the Plan);

- **Fails to require that any payments be made to unsecured creditors** (Section 10,1.3; "If the Reorganized Debtor has insufficient funds on hand to make a scheduled payment, the disbursement amount may be reduced and the deficiency will be paid at the next payment … in the event the Reorganized Debtor has insufficient funds available to make final payment on October 1, 2012, additional payments may be made on April 1 and October 1, 2013 … to complete the Plan.")

- **Releases insiders from claims and possible avoidance actions which could total approximately $10,000,000** without any compensation, explanation or justification (Debtor's

OBJECTION TO CONFIRMATION – 2

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 2 of 17

Statement of Financial Affairs [Docket No. 24] at Question 3c, payments to insiders; Question 10, transfers outside the ordinary course of business; Question 14 setoffs).

• Has no default provisions which would require the Debtor to make any payments to unsecured creditors or would allow enforcement of the Plan except by stating the unsecured creditors would retain their contractual rights under the plan (Section 14 of the Plan).

3. Acquisition believes that the current Plan fails to maximize the value of the bankruptcy estate, as required by law. See Commodity Futures Trading Commission, 471 U.S. 343, 352 (1985) (duty of debtor to maximize the value of the estate); In re General Teamsters, etc., 265 F.3d 869, 877 (9th Cir. 2001) (maximizing the value of the bankruptcy estate is a central purpose of the Bankruptcy Code); In re Pacific Gas and Electric Company, 304 B.R. 395, 404 (Bkrtcy. N.D. Cal. 2004) (same). For this and for the other reasons set forth below is not confirmable under the provisions of the Bankruptcy Code.

## FACTUAL BACKGROUND

4. The Debtor is an entity formed to run hobby gaming and other related conventions. It traces its origins to hobby game conventions which were first held 41 years ago in Wisconsin. Its primary source of income is from registrations and/or vendor booth fees for its convention.

5. In 2002, Peter Adkison ("Adkison") acquired Gen Con from Hasbro's Wizards of the Coast ("Wizards") division. Until its 2001 acquisition by Hasbro, Adkison had served as Wizards' CEO.

A. **Adkison Insider Relationship with Debtors**

6. Adkison is also the chairman and CEO of Hidden City Games, which markets *Bella Sara*, a collectable card game and computer game for young girls. In November of 2007, Hidden City Games was funded with $15,000,000 from Rustic Canyon Partners and Trinity Ventures. Information concerning Hidden City Games's capitalization was withheld in the Debtor's Disclosure Statement which instead described Hidden City Games as a "start up".

OBJECTION TO CONFIRMATION – 3

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 3 of 17

7. Adkison is also an owner, with his former spouse, Melissa Reis,[2] of Off the Grid LLC. Off The Grid is apparently a company which provides specialty merchandise and has operated the Debtor's "store" for Debtor merchandise at its conventions.

8. The Debtor Has Stated In Its Monthly Operating Reports That It Does Business With Both Off The Grid And Hidden City Games, but does not detail what goods or services either of these entities provide to the Debtor. Further, the Debtor does not explain the basis for the payments, setoffs and transfers made to them.

9. As noted in the Debtor's disclosure statement, the Debtor has consistently lost money over the past several years of its operation (Docket No. 93).

**B.    2007 Financial Crisis**

10. In May of 2007, Gen Con produced a convention for Star Wars fans called "Celebration IV" ("C IV"). The Debtors have stated that massive losses from this event was one of the causes of its bankruptcy.

11. During C IV, the Debtor conducted a charity auction ("Auction") for the benefit of the Make-A-Wish Foundation ("Make-A-Wish") under an agreement with Lucas Films Ltd. ("Lucas") by which Lucas provided numerous items, including Star Wars memorabilia, to be auctioned for the benefit of Make-A-Wish.

12. The Auction took place during the week of May 24, 2007 and raised approximately $150,000 for Make-A-Wish from the sale of the Lucas items.

13. The Debtor refused to pay the Auction proceeds to Make-A-Wish even though the proceeds were either Lucas' or Make-A-Wish's property until this Court's sua sponta order of November 28, 2008 directing the Debtor to turnover the auction Proceeds to Make-A-Wish (Docket No. 108)

---

[2] On information and belief, Adkison and Ms. Reis obtained their divorce during the pending of this bankruptcy case.

OBJECTION TO CONFIRMATION – 4

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 4 of 17

14. During 2007, the Debtor grossed approximately $7.3 million in revenue and lost approximately $1.8 million. In addition to revenues from its operations in 2007, the Debtor obtained loans of $500,000 from John W. Jordan (Claim No. 15), a vice president of Wizards under Adkison, $200,000 from Tom Des Brisay (Claim No. 4) and $125,000 from Hidden City Games (Claim No. 17). None of these funds were used to pay Make A Wish and there are no documents supporting the Hidden City Games claims attached to its Proof of Claim.

**C.    Insider Transactions**

15. From May of 2007 through February of 2008, Adkison paid several million dollars to Hidden City Games and Off The Grid, and/or allowed Hidden City Games and Off The Grid to setoff several million dollars while Make A Wish and other non-insider creditors were not paid. See Debtor's Statement of Financial Affairs' attached lists detailing transfers outside of the ordinary course of business, payments and setoffs to Insiders.

16. Although not disclosed in the schedules initially filed by the Debtor, or in their proofs of claim, Atkison personally guaranteed the Jordan and Des Brisay loans to the Debtor. Jordan and Des Brisay are two of the three members of the Creditors Committee. See Debtor's Amended Schedules, Schedule "H" filed October 1, 2008 (Doc No. 90).

**D.    Lucas Suit**

17. In early January of 2008, Lucas filed suit against the Debtor seeking recovery of $500,000 plus payment of the Make A Wish debt. Although not disclosed in the Debtor's Schedules or Disclosure Statement, the Debtors asserted a counter claim against Lucas in the amount of $77,289.50.

18. In its Disclosure Statement, the Debtor indicated that the Lucas claim is the only claim which they dispute, although in their schedules, the Debtor listed $284,099.32 of the Lucas claim as undisputed.

**E.    Bankruptcy Filing**

19. On February 15, 2008 the Debtor filed the current Chapter 11 Bankruptcy.

OBJECTION TO CONFIRMATION – 5

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 5 of 17

20. In Schedule B, the Debtors failed to list ownership of 71,770 shares of Series A Preferred Stock of Hidden City Games. <u>See</u> Debtor's Schedules and Amended Schedules.

21. In Schedules E and F, the Debtor failed to list its obligations to the vendors and individuals who had pre-registered for its convention. As noted above, a significant amount of the Debtors' income is derived from the pre-payment of fees for attendance, playing in events and merchant booth space, which creates both an asset in the form of cash and a liability to the particular registered party. <u>See</u> Exhibit E to the Debtors' Disclosure Statement noting 2009 deposits as a liability.

22. In its answer to Question 3.C of the Statement of Financial Affairs ("SOFA"), Payments to Insiders within a year of Bankruptcy, the Debtor stated it had made the following payments to or on behalf of Insiders:

> HIDDEN CITY
> GAMES[3]: $3,619,983.61
> OFF THE GRID: $976,688.41

23. In its Answer to Question 10.a of the SOFA, Other Transfers outside the Ordinary Course of Business made within 2 years of the Bankruptcy, the Debtor stated that it had made the following payments to insiders:

> HIDDEN CITY
> GAMES: $250,000.00
> OFF THE GRID: $1,187,994.67

24. In its answer to Question 13 of the SOFA, Setoff, the Debtor stated that it had allowed (as Adkison controlled both companies) the following setoffs:

> HIDDEN CITY
> GAMES: $3,722,160.91
> OFF THE GRID: $107,024.65

---

[3] The Debtor, per Adkison, also stated it owed no further amounts to Hidden City Games which directly contradicts the Debtor's Schedule F and Hidden City Games's Proof of Claim.

OBJECTION TO CONFIRMATION – 6

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 6 of 17

25. In its Answer to Question 23 of the SOFA, withdrawals from a partnership or distributions by a corporation, the Debtor stated that it had made the following distributions to its owner and officers:

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Peter Adkison<br>120 Lakeside Ave #100<br>Seattle, WA 98126<br>Owner | 2/07 through 11/07<br>Owner's draw | $127,109.21 |
| Peter Adkison & Off the Grid<br>*Infusion of loan proceeds to Gen Con to pay bank line of credit | 4/07 | -$500,000 |
| Peter Adkison & Off the Grid<br>*funded by Adkison mortgage on residence | 4/07 | $745,000 |
| Peter Adkison & Off the Grid<br>*Transfer mortgage obligation and Note Payable from Gen Con, LLC to Off the Grid and cancellation of Off the Grid debt | 11/07 | $1,187,994.67 |
| Adrian Swartout<br>4403 – 51st AVE S<br>Seattle, WA 98118<br>President | 2/15/07 through 2/15/08 for wages (net) | $74,373.52 |
| Ann Eutsler<br>3520 Olympic BLVD W<br>Tacoma, WA 98466<br>CFO | 2/15/07 through 2/15/97 for wages (net) | $85,290.25 |

It appears that the distributions to Adkison and Off The Grid are duplicative of those listed in questions 3c, 10a and 13 of the SOFA.

26. The Debtor's Amended Plan, is designed to, immediately on confirmation, release the Insider Defendants from approximately $10,000,000 of avoidance actions which are

OBJECTION TO CONFIRMATION – 7

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 7 of 17

admitted, under oath by Adkison, CEO of Hidden City Games, owner of Off The Grid and individual defendant.

27. Section 12.3 of the "Miscellaneous Provisions" article of the Plan provides "Upon confirmation, the Debtor will waive all avoidance actions" which is defined in Section 1.5 of the Plan as "any and all claims and causes of actions arising under the Bankruptcy Code, including without limitation, Sections 544, 545, 547, 548, 549 and 550."

28. As these waiver provisions include a waiver of 11 U.S.C. §549 actions, it will effectively preclude any investigation of the Debtor, its principals' and processionals' actions in this case.

29. In return for this immediate release, the sole consideration given by Adkison and Hidden City Games is their agreement to subordinate their claims, totaling approximately $430,000, to the payment of other unsecured claims.

30. Further, there are no payments guaranteed to unsecured creditors except for payments from current cash on hand, which shall be used to pay administrative and priority claims. See Amended Plan, Section 10.4.1.

31. Section 10.1.3 of the Plan which governs payments to Class 3 unsecured creditors, provides:

> Class 3 Claims: The Reorganized Debtor shall disburse $364,000.00 every six (6) months starting April 1, 2009, with a final disbursement sufficient to pay the remaining balance of all Allowed Class 3 Claims in full with interest as called for in the Plan on or before October 1, 2012. Payments shall be applied first to accrued interest, and next to reduce the principal balance of the Allowed Class 3 Claim. If the Reorganized Debtor has insufficient funds on hand to make a scheduled payment, the disbursement amount may be reduced, and the deficiency will be paid at the next payment date to the extent funds are available or added to the October 1, 2012, payment; provided however, that in the event the Reorganized Debtor has insufficient funds available to make final payment on October 1, 2012, additional payment may be made on April 1 and October 1, 2013 as necessary to complete the Plan.
>
> The Class 3 Claims may be paid in full at any time with no prepayment penalty. Moreover, the Reorganized Debtor may, subject to the approval of the Advisory Committee, propose to make a cash out payment to the Class 3 Claims at a discounted rate, provided any such discounted early payment proposal is

OBJECTION TO CONFIRMATION – 8

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 8 of 17

made to all members of Class 3. The Reorganized Debtor may seek to reach agreement with individual Class 3 creditors and need not obtain approval of all Class 3 Creditors in order to distribute a discounted cash out payment to those Class 3 Creditors electing to receive such payment in full satisfaction of their Allowed Claims, and shall continue to pay any Class 3 Creditor in accordance with this Plan should they not elect a cash out.

32. This provision, however, allows the Debtor to not make the biannual $364,000.00 payments if the Debtor has "insufficient funds on hand." Further in contradiction to Section 6.1 of the Plan, Section 10.1.3 only requires payments to be made by the Debtor through October 1, 2013.

33. The Plan also benefits its Insiders by assuming and assigning a real estate and computer lease to Hidden City Games. As one of the Debtor's most valuable assets is its computer programs and customer lists, assigning its computers to a third party greatly harms the Debtor. This will also give Insiders the chance to "reincarnate" the Debtor should its Plan collapse, as they may have sole control of many of the Debtor's most valuable assets. (Section 9.2 and 9.3 of the Plan.

34. Finally, the Debtor's Plan fails to provide a meaningful default provision, as Article 14 of the Plan hinders creditors by requiring 30 day written notice of a default and providing no remedies, other than their basic contractual rights, if a default is in fact declared.

**F.** **Acquisition Plan**

35. In contrast to the hope and prayer Plan of the Debtor, Acquisitions offer:

• Guarantees, by funds deposited by Acquisition in the undersigned's Escrow Account, of the payment in full of all allowed administrative expenses and priority claims (see attached Exhibit A);

• Guarantees, by funds deposited by Acquisition in the undersigned's Escrow Account, the holders of all allowed unsecured claims the option of either an **immediate guaranteed payment of 70% of their claims** or a partially guaranteed payment, over time, of 100% of their claims plus interest (see attached Exhibit A);

OBJECTION TO CONFIRMATION – 9

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 9 of 17

- Provides for the retention of all operation capital currently in the Debtor to ensure funding of the future operations and conventions (see attached Exhibit A);

- Preserves of all of the Debtor's claims and causes of action ("Debtor Claims") against insiders and or associates and affiliates of insiders ("Insider Defendants") to further ensure payment of creditors' claims; and

- Waives Debtor Claims against third party trade vendors and other third party unsecured creditors who are not Insider Defendants.

36. It is therefore clear that Acquisitions offer is financially superior, as it guarantees payments to creditors and provides the Debtor with the amount of operating capital to run its conventions and operate its business.

## II. LEGAL ARGUMENT

### A. The Debtor's Plan is Not Proposed in Good Faith in Violation of 11 U.S.C. §1129

37. As noted in the factual background above, in order for a plan to be proposed in good faith, it must be designed to facilitate the purposes of the Bankruptcy Code which include the successful rehabilitation of debtor and "maximizing the value of the bankruptcy estate." In re General Teamsters, 265 F.3d at 877; In re Pacific Gas and Electric Company, 304 B.R. at 404. Here, the Plan does not facilitate the legislative purpose of the Bankruptcy Code, but instead serves as a disguise for a valueless settlement with the Debtor's Insiders.

#### i) Plan Releases Insiders for No or Insufficient Value

38. Initially, it is beyond dispute that primary beneficiaries under the Plan are Adkison, Hidden City GameS and Off The Grid, as they receive immediate releases of the Debtor's Claims against them while providing, at best, a possible payment to creditors.

39. It is well settled that plans which are based on insider interests are proposed in bad faith. See In re Coram Healthcare Corp., 271 B.R. 228 (Bkrtcy D. Del. 2001); Matter of Fiesta Homes of Georgia, Inc., 125 B.R. 321, 325 (Bkrtcy. S.D. Ga. 1990) (Debtors could not

OBJECTION TO CONFIRMATION – 10

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 10 of 17

confirm any Chapter 11 plan where significant portion of plan funding would have to come from insider preferences).

40. As this Debtor has at least $10,000,000 of potential claims against its primary owners, Adkison and his former spouse, as well as two closely related entities and the Plan proposes to release them for a subordination of perhaps $430,000 in unsecured claims, the Plan is clearly proposed in bad faith and not confirmable.

     ii) <u>Plan Does Not Require Payments to Creditors</u>

41. Under the specific language of the Plan, as discussed in detail above, the Debtor can <u>always</u> defer payments to unsecured creditors if they lack sufficient funds. A plan which permits unlimited delays in payment (which could end in October of 2013 with no additional payments), is not in the best interests of creditors. The Plan also violates 11 U.S.C. §1129(a)(1) by not fairly treating creditors. <u>See</u> <u>generally</u> <u>In re Harman</u>, 141 B.R. 878 (Bkrtcy E.D. Pa. 1992) (Debtor's failure to provide payment except over 30 years or at 25% of their allowed amount filed in bad faith where no restrictions on debtor's expenditures).

     iii) <u>The Debtor has Assigned a Lease of its Computers to HIDDEN CITY GAMES without Explanation or Consideration</u>

42. In their Schedules, the Debtor lists only $31,841.78 in "office" equipment. Therefore, the Dell computers being assigned to Hidden City Games apparently are the bulk of, it not the only, computers in the Debtor's possession. Debtor's Schedule B at question 28.

43. However, the Debtor lists in its Schedules and Monthly Financial Statements computer software with a value over $1,000,000, at cost, and $152,078.06 at depreciated value. This software is important to the Debtor's conventions, as it, among other things, allows the convenient registration and scheduling of events.

44. While the Debtor's Disclosure Statement notes the Dell Computer lease will be assumed, it fails to note that a certain lease and the underlying computers will be assigned to

OBJECTION TO CONFIRMATION – 11

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG Doc 124 Filed 12/30/08 Ent. 12/30/08 17:29:03 Pg. 11 of 17

Hidden City Games. Indeed, the initial Plan, as opposed to the Amended Plan, also does not call for the assignment of the computers to Hidden City Games. See Exhibit 2 to the Amended Plan.

45. Although the exact import of this assignment is unclear, in the event the Plan fails and the computers assigned to HIDDEN CITY GAMES contain the Debtor's software, Hidden City Games will potentially, if not legally, be in the best position to resurrect Gen Con as an event.

46. Therefore, the assignment of the computer lease also appears to be in bad faith and renders the Plan unconfirmable.

    iv) <u>There are No Effective Default Provisions to Ensure Debtor's Performance Under the Plan</u>

47. The Plan also violates the good faith requirements of 11 U.S.C. 1129(a)(3) due to the lack of any effective default provisions.

48. Article 14 of the Plan, which is titled "Events of Default", provides no standard or definition of what constitutes an event of default under the Plan and, in fact, limits creditors' rights by requiring written notice and a 30 day cure period.

49. The Advisory Board, controlled by close associates of Adkison, whose debts are guaranteed by Adkison, have no real powers other than the right to consult concerning the Debtor's operations and to veto certain "Major Decisions".

50. In light of this, it is clear there is no effective way for either a default to be declared, or creditors to recover on their claims after such a default under the Plan. Therefore, the Plan is not proposed in good faith as required by <u>In re General Teamsters</u>, 265 F.3d at 869.

    v) <u>The Debtor's Pre and Post Petition Refusal to Turn Over Auction Proceeds to Make-A-Wish Demonstrates the Plan was Filed in Bad Faith.</u>

51. One of the key underlying causes of the Debtor's bankruptcy was its management's refusal to turn over property, **in which the Debtor's have no interest**, to Make-A-Wish to use in its mission to fulfill the wishes of children facing life threatening medical conditions.

OBJECTION TO CONFIRMATION – 12

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 12 of 17

52. Acquisition is not sure whether Debtor's management simply preferred to pay money to insiders (see paragraphs 10-15 above) or used the Make-A-Wish Auction proceeds as a "bargaining chip" against Lucas. However, either course of action reflects, at best, an extremely poor business and moral decision on the Debtor's part and, at worst, cold bloodiness which Scrooge, before he was visited by the 3 Ghosts, would find reprehensible.

53. Further, the Debtor took no post petition steps to turn over the Auction Proceeds to Make-A-Wish until this Court ordered the turnover in November of this year, nearly a year and a half after the proceed should have been turned over.

54. The majority of courts have held that prefiling conduct of a Debtor can be considered in determining whether a plan was filed in good faith. See In re Georgetown Ltd. Partnership, 209 B.R. 763 (Bkrtcy M.D. Ga. 1997); In re SM 104 Ltd., 160 B.R. 202 (Bkrtcy S.D. Fla. 1993). Further, it is clear a debtor's conduct post petition in proposing a plan can be considered in determining a debtor's good faith.

55. Here, refusing to turn over approximately $150,000 to Make-A Wish, which was proceeds from the auction of Lucas's property proves a total lack of food faith on the part of the Debtor.

      vi) <u>The Debtor has Acted in Bad Faith in Failing to Consider Acquisition's Offer</u>

56. Finally, as noted above, Debtor has a duty to maximize the value of its estate. See Commodity Futures Trading Commission, 471 U.S. 343, 352 (1985) (duty of debtor to maximize the value of the estate); In re General Teamsters, etc., 265 F.3d 869, 877 (9th Cir. 2001) (maximizing the value of the bankruptcy estate is a central purpose of the Bankruptcy Code); In re Pacific Gas and Electric Company, 304 B.R. 395, 404 (Bkrtcy. N.D. Cal. 2004) (same).

57. Here, as noted above, the Debtor has ignored an offer which has guaranteed payments, superior options for creditors and provides better funding for the Debtor's operations

OBJECTION TO CONFIRMATION – 13

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 13 of 17

going forward. In light of the unilateral and unexplained rejection of Acquisition's offers, the Debtor's Plan should not be confirmed as it violates 11 U.S.C. §1129(a)(3).

### B. The Hiddent Settlement in the Debtor's Plan Fails to Meet the Requirements of 11 U.S.C. §§ 1123(b), 1129(a)(1) and Bankruptcy Rule of Procedure 9019.

58. Although almost totally ignored by the Debtor in its Disclosure Statement and Plan, the core of the Debtor's Plan is the waiver of at least $10,000,000 of avoidance actions and possibly other claims against Adkison, Hidden City Games and Off The Grid, as set forth in the Debtor's Schedules which were signed by Adkison on behalf of the Debtor.

59. Section 12.3's waiver also forecloses all but a criminal investigation of any post-petition actions by the Debtor, its managers and professionals, as 11 U.S.C. § 549 actions are waived.

60. Here, the sole "consideration" for the waiver of these claims is the voluntary subordination of approximately $430,000 in claims by Hidden City Games and Adkison to other unsecured claims. Off The Grid is obtaining its release for no consideration.

61. Under 1123(b)(3)(A), a debtor may settle or adjust a claim, but such a settlement must be approved under the traditional fair and equitable standards of 9019. See In re New Century TRS Holdings, Inc., 390 B.R. 140, 167 (Bkrtcy D. Del. 2008).

62. This insignificant consideration clearly does not meet the test of approval of 9019 settlements set forth by the Ninth Circuit in In re A&C Properties, 784 F.2d 1377, 1380-81 (9th Cir. 1986).

63. Here, even if a 20% overall chance of success on the various transfers is assumed on claims which are essentially admitted by Adkison, Hidden City Games and Off The Grid as being voidable, the estate would realize approximately $1,000,000.00. None of the remaining factors of the A&C Properties' test reduce the value of this settlement to a point where subordination of claims proposed in the Plan in any amount would be of any value, especially given the amount of the claims released.

OBJECTION TO CONFIRMATION – 14

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 14 of 17

64. Therefore, as the provisions of Section 12.3 of the Plan cannot be approved, the Plan's confirmation must be denied.

### C. The Plan Fails to Meet the Liquidation Test

65. The Plan also fails to meet the liquidation test in 2 major respects.

66. In the liquidation analysis, the Debtor's place no value on its software programs used to run its conventions, its Hidden City Games stock and most importantly, the Debtor's claims. The failure to correctly value these assets totally destroy the liquidation analysis.

67. The Debtor has also totally ignored Acquisition's offer which would result, in the simplest case, in an immediate payment of 70% to all creditors in calculating the liquidation test.

68. Further, the Debtor totally failed to place any present value on the irregular stream of payments which the Plan could provide in the future. AS noted in the feasibility analysis, the Debtor projected net income prior to payment of the $344,000 biannual payments is far less than the Plan payments until 2011. See Disclosure Statement Exhibit C.

69. Without going through an exact analysis of the present value of the payments under the Plan, it is clear that the Debtor has failed to meet a requirement of confirmation by not demonstrating that its Plan, which claims to pay 100% with interest, meets the liquidation test when true values for both the Debtor's assets and the proposed stream of payments is in serious doubt or totally missing. See In re Walker, 165 B.R. 994 (Bkrtcy E.D. Va. 1994) (Debtor's highly speculative plan with no guaranteed payments which proposed 100% payment on claims with 7% interest unconfirmable).

### D. The Plan is Not Feasible Under 11 U.S.C. §1129(a)(11)

70. Finally, assuming the Debtor's Plan actually would require annual payments of $724,000 to unsecured creditors, even the Debtor's overly optimistic projections of net income in Exhibit C of their Disclosure Statement does not meet those payment requirements until 2011.

71. The projections show almost no increase in expenses and significant increases in revenue with no explanation. Further, the payments leave almost no capital for operations of the

OBJECTION TO CONFIRMATION – 15

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 15 of 17

business. Therefore, the Debtor cannot demonstrate that there is a reasonable prospect for success of its Plan, especially when it abandons one of its most valuable assets, its claims against insiders and the Plan is not confirmable. See generally In Re Ridgewood Apartments of Dekalb County Ltd., 183 B.R. 784 (Purpose of Chapter 11 feasibility requirement is to prevent confirmation of visionary schemes).

## CONCLUSION

72. Gen Con, the convention is a vital part of the hobby gaming industry. It serves hundreds of small businesses by providing them with a critical place to market their products as well as provides inexpensive entertainment to tens of thousands of people. It has, however, fallen on hard times, due not to the lack of dedication on the part of its volunteers and most of its employees, or lack of interest by vendors or attendees. Rather, its problem arises from decisions by certain members of management to pay insiders and not vendors or charities – such as Make-A-Wish.

73. The Debtor's Plan fails financially to address Gen Con's problems because it provides no capital. The Plan fails legally and morally because it allows insiders to retain their improper gains while offering no guaranteed payments to creditors. The Debtor also acts in bad faith by failing to even consider Acquisition's guaranteed offer.

Wherefore, for these reasons, Acquisition requests that this Court deny confirmation of the Debtor's Plan, order Debtor's counsel and management to submit a new Plan incorporating the terms of Acquisition LOI and grant such further relief as is appropriate under the circumstances.

DATED this 30th day of December, 2008.

FOSTER PEPPER PLLC

*s/ Dillon E. Jackson*

Dillon E. Jackson, WSBA #1539

and

OBJECTION TO CONFIRMATION – 16

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 16 of 17

| | |
|---|---|
| 1 | GREENEBAUM DOLL & MCDONALD PLLC |
| 2 | |
| 3 | *s/ Claude R. Bowles, Jr* |
| 4 | Claude R. Bowles, Jr, Pending Pro Hac Vice |
| 5 | Attorneys for Gen Con Acquisition LLC |


1

2   GREENEBAUM DOLL & MCDONALD PLLC

3   *s/ Claude R. Bowles, Jr*
    _____
4   Claude R. Bowles, Jr, Pending Pro Hac Vice

5   Attorneys for Gen Con Acquisition LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

OBJECTION TO CONFIRMATION – 17

**FOSTER PEPPER PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

50958228.3

Case 08-10844-TTG    Doc 124    Filed 12/30/08    Ent. 12/30/08 17:29:03    Pg. 17 of 17