

December 30, 2008

Ms. Adrian Swartout
c/o Shelly Crocker
Crocker Kuno LLC
720 Olive Way, Ste 100
Seattle, WA 98101

Re: **SECOND REVISED LETTER OF INTENT FOR THE PURCHASE OF THE ASSETS OF GEN CON LLC CHAPTER 11, CASE NO. 08-10844 (BKRTCY W.D. WASHINGTON)**

Dear Mr. Swarout:

This revised letter of intent ("LOI") sets forth a summary of the revised proposed terms and conditions for an agreement between the Gen Con Acquisition Group LLC ("Buyer"), a Delaware LLC and creditor, and the Gen Con LLC bankruptcy estate ("Seller") for the acquisition of all the Assets of the Seller (as defined below) pursuant to an 11 U.S.C. §363 sale under a plan of reorganization. The revisions in the offer come from discussions with the unsecured creditors' committee – the only party which has discussed the offer with Buyer. This offer is only conditioned upon the following: (i) completion of satisfactory due diligence; (ii) negotiation and execution of a mutually agreeable Asset Purchase Agreement ("APA"); (iii) timely payment by Seller of the Make-A-Wish claim in compliance with the order of the Bankruptcy Court ("Bankruptcy Court"); and (iv) approval of the transaction by the Bankruptcy Court.

1. Information Regarding Buyer:

Buyer has secured committed funding for the acquisition of Seller, and there will be no contingent financing involved with the offer to purchase Seller. Buyer has assembled a team of senior staff experienced in operating this type of business, with extensive contacts in the industry and a passion for the renewed success of the business. Buyer intends to acquire the Assets (defined below) with a view to continuing the Gen Con convention on a yearly basis and operating the business as a going concern for the foreseeable future.

2. Purchase Price and Form of Consideration:

The purchase price ("Purchase Price") shall be the amount sufficient to pay all Administrative Expenses, Priority Claims and Unsecured Claims ("Allowed Claims"). Buyer shall retain the right to review, and if appropriate, object to the allowance of any claim in the Bankruptcy case. Buyer shall pay Seller the sum of: (i) $500,000 on the date of the Closing (defined below); (ii) $400,000 within thirty (30) days of the Closing; (iii) $400,000 every six (6)

months until all Allowed Claims of the Seller are paid in full; and (iv) 50% of all proceeds from any Bankruptcy claims until all Allowed Claims are paid in full. All Allowed Claims shall be paid six percent (6%) interest on their claims until satisfied. These provisions shall be subject to mutually satisfactory terms and conditions of a final negotiated APA. The Buyer is willing to post, in its Counsel's escrow account, the $900,000 initial payment as evidence of its commitment to this offer.

3.  Up-Front Creditor Payment Option:

The Buyer will offer every creditor of Seller, the option ("Option"), to satisfy their entire Allowed Claim, within thirty (30) days of the Closing of the transaction, for an amount equal to 70% of the amount of the Allowed Claim in full satisfaction of the Allowed Claim. A creditor who does not exercise the Option would be entitled to receive their pro-rata portion of the $900,000 in up-front payments and receive their pro-rata portion of the $400,000 bi-annual payments plus 6% interest pursuant to Section 2 above. However, the amount of the $900,000 in up front payments and the amount of the $400,000 bi-annual payment would be reduced proportionately by the percentage of Allowed Claims that exercise the Option. For example, if creditors representing 25% of the total dollar amount of Allowed Claims exercised the Option, the up front payments described in Section 2 above would be reduced to $375,000 and $300,000, respectively and the bi-annual payments would be reduced to $300,000.

4.  Cash Reserves and Operating Funds:

The Purchase Price will be paid with new funds from the Buyer and all cash reserves, cash equivalents, and operating funds currently held by the Seller will be retained and used for operating the business as a going concern.

5.  Buyer Letter of Credit:

The Buyer will also post an additional $500,000 Letter of Credit to secure the final payment to creditors for Allowed Claims pursuant to the proposed schedule. The Letter of Credit will be immediately available to creditors holding Allowed Claims should Buyer default on any scheduled payment under the terms of the Purchase Price above.

6.  Bid Protection Mechanisms:

The Buyer shall, under the terms of the APA, and with approval of the Bankruptcy Court prior to the approval of the contemplated transaction, be entitled to a break up fee of $50,000, plus reasonable professional fees and expenses (including, not but limited to, attorney fees and expenses). If approved by the Bankruptcy Court prior to the approval of the contemplated transaction, the Buyer will also be granted additional bid protection, in that any competitive offer or bid must provide for an additional $250,000 in payments secured by a Certificate of Deposit or Letter of Credit.

7. Assets:

The Purchase Price will be the full consideration for assets being purchased which include, but are not limited to, all personal property, cash, cash equivalents, the proceeds of all causes of action of Gen Con LLC, including, but not limited to, all avoidance actions under Chapter 5 of the Bankruptcy Code ("Bankruptcy Claims"), furniture, fixtures, equipment, signage, supplies, small wares, contracts, all of the Seller's right, title and interest in all licenses, permits, intellectual property, computer software and hardware (including point of sale equipment), telephone numbers, leases, franchise agreements, vehicles, parts and improvements thereon, all leases and other executory contracts which the Buyer shall designate in the APA, relating to Seller, but will not include any leases or executory contracts which Buyer chooses not to have Seller assume, and assign to Buyer as set forth in the APA (collectively, "Assets"). The Buyer is willing to agree to waive any Bankruptcy Claims of the Debtors against any third party creditors who are not Insiders of the Debtor or connected to Insiders of the Debtors.

8. Assumed Liabilities:

Buyer will assume and agree to discharge and perform all obligations of the Seller and executory obligations arising after the Closing under all assumed and assigned executory contracts and leases as set forth in the APA. Except for the foregoing, Seller will retain, discharge and perform all of its other liabilities and obligations.

9. Seller Employees:

Purchaser shall use commercially reasonable efforts to continue the employment of all the employees of the Seller who can be accommodated, on a case-by-case basis, with substantially similar compensation and benefits. However, any continuation of employment of the employees of Seller shall be on such terms and conditions as Buyer, in its sole discretion, determines to be appropriate, and without guarantee that any such employees shall receive offers of employment for the same or similar positions that they currently hold, or for the same or similar wages and benefits that they currently receive.

10. "As-Is, Where-Is" Conveyance:

Buyer acknowledges and agrees with Seller that Buyer is purchasing the Assets in an "as-is" and "where-is" condition "with all faults" and all latent or patent defects, and specifically and expressly without any warranties, representations or guaranties, either express or implied, of any kind or nature, or type whatsoever from or on behalf of the of the Seller, except the conventional and reasonable representations and warranties set forth in the APA and any warranties of manufacturers that pass through on the sale of the Assets.

11. Timing/Closing:

Buyer and Seller will use good faith efforts to consummate the contemplated transactions no later than January 31, 2009 (the "Closing"). Prior to this time, the Buyer and Seller will enter

into an appropriate Management Agreement to allow Buyer to supervise the Debtors' operations pending confirmation of the Plan as set forth herein.

12. Due Diligence Requirements:

Buyer will, with reasonable cooperation by the Seller, complete due diligence no later than January 15, 2009 (the "Due Diligence Period"), such due diligence to be to the satisfaction of Buyer, its legal counsel and advisors. Areas of review will generally be limited to verification of the Debtor's monthly operating statements, bankruptcy schedules, executory contracts and leases, bankruptcy claims, tax records and related tax information, vendor agreements, employment agreements, benefit programs, insurance policies, equipment lists, and capital expenditure requirements. Seller shall provide Buyer and its agents, attorneys, consultants, investments bankers, lender and employees (collectively, the "Representatives") complete access with reasonable prior notice to all of the Seller's facilities, corporate offices, detailed asset lists by location, vendor and payable records, and other books and records, and shall cause Seller's agents to cooperate fully with Buyer and its Representatives in connection with the Buyer's due diligence investigation of Seller's assets, contracts, liabilities, operations, records and business.

13. Confidentiality:

Buyer agrees that any and all information, documents, contracts, and other materials delivered by Seller, whether prior to or following the date of this LOI, in connection with or relating to the transaction (the "Confidential Information") shall be maintained confidentially by Buyer and its representatives. Buyer shall certify that any representative of Buyer has a duty of confidentiality with respect to any of the Confidential Information.

In the event the proposed transaction is not closed or otherwise upon written demand, Buyer agrees to promptly return the Confidential Information and all copies thereof. The foregoing restrictions with respect to the Confidential Information shall not apply to any information which: (i) is on the date hereof, or hereafter becomes, generally available to the public other than as a result of a disclosure, directly or indirectly, by or on behalf of the Buyer; (ii) was available to the Buyer on a non-confidential basis prior to its disclosure; or (iii) becomes available to the Buyer on a non-confidential basis from a source other than the Seller, which source was not itself bound by a confidentiality agreement with Seller or Buyer and which did not receive such information, directly or indirectly, from a person or entity so bound.

14. Regulatory Filings:

Buyer has not yet determined the filing requirements under any local, state and federal regulatory statutes. Seller will cooperate with Buyer if it is determined that such filings are necessary. Buyer shall bear all costs in connection with obtaining any such regulatory approval.

15. Allocation of Purchase Price:

The allocation of the Consideration between leasehold improvements, equipment, furniture and fixtures, and goodwill shall be reasonably and mutually agreed by Buyer and Seller. Buyer's proposed allocation shall be provided within a reasonable time after execution of this LOI and the final allocation shall be set forth in the APA.

16. Representations, Warranties and Indemnities:

The APA will contain representations, warranties and indemnities from Seller, its shareholders and Buyer as are mutually agreed upon by the parties.

17. Assignment of Buyer's Rights:

Buyer shall have the right, upon written notice to Seller, but without its consent or approval, to assign its rights and obligations under this LOI to one or more affiliated assigns and to cause the purchase to be consummated by such assigns. Buyer intends to exercise this right in favor of a newly created business entity.

18. Termination of this LOI:

This LOI may be terminated upon written notice by Buyer to Seller at any time prior to January 9, 2009. After that date, unless previously accepted by Seller, this LOI shall automatically terminate.

19. Nature of this LOI:

This LOI is intended for the purpose of making a firm offer as set forth herein, however, no party shall be under any legal obligation or have any liability to any other party with respect to the transactions contemplated hereby until the APA is executed and delivered by and between the parties hereto and the transaction set forth herein is approved by the Bankruptcy Court. Notwithstanding the foregoing, the obligations of the parties as set forth in Paragraphs 7, 8, 13, 14, 15 and 16 shall be legally binding upon Buyer, Seller and their respective successors and assigns, promptly upon execution of this LOI by the parties.

20. Conduct of Business:

By execution of this LOI, Seller agrees that from the date hereof through the Closing or, if sooner, the date on which a definitive APA is executed or the date on which this LOI terminates without execution of a definitive APA, Seller will not: (i) sell, assign or otherwise dispose of any of the material Assets except for the use of such assets in the ordinary course of business (provided Seller retains the right to dispose of and replace Assets in the ordinary course of business); (ii) enter into any material modification to the existing contracts or other agreements or enter into any new contracts outside the ordinary course of business; (iii) modify the compensation paid or payable to any of the employees of Seller other than compensation adjustments made in the ordinary course of business; (iv) perform in a manner intended to

materially compromise Seller's standing under any applicable franchise agreement or license; or (v) allow any insurance policies required by any of the applicable franchise agreements to lapse. Seller further agrees that from the date hereof through the Closing or, if sooner, the date on which a definitive APA is executed or the date on which this LOI terminates without execution of a definitive APA, Seller will maintain the business and all personal property and improvements and other assets in an order and condition which is consistent with past practices.

21. Miscellaneous:

There are no third party beneficiaries of this LOI. This LOI states the entire agreement between the parties and supersedes any prior communications with respect to the subject matter hereof. The terms herein may only be changed in a written document executed by both parties. This LOI shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky. Facsimile signatures shall constitute original signatures. This LOI shall become effective upon the execution and delivery of a counterpart hereof by all parties hereto.

22. Notices:

All notices under this LOI shall be in writing to the following addresses:

If to Buyer, to C. R. Bowles, Greenebaum Doll & McDonald PLLC, 101 South Fifth Street, 3500 National City Tower, Louisville, Kentucky 40202; or

If to Seller, to Shelly Crocker, Crocker Kuno LLC, 7200 Olive Way, Ste 100, Seattle, Washington 98101

*[Signatures Appear on the Following Page]*

If the foregoing provisions are acceptable, please sign and date this LOI in the space provided below to confirm the mutual agreements set forth herein and return a copy to the undersigned on or before 5:00 p.m., Pacific Standard Time, on December 19, 2008.

Very truly yours,

_____
C.R. Bowles, in his capacity
as Counsel for the Gen Con Acquisition Group


Agreed to and Accepted:

GEN CON LLC
Debtor and Debtor in Possession

By: _____

Name: _____

Title: _____


3111467_3.doc