UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re | No.  08-10844-TTG |
| GEN CON LLC, | MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION |
| Debtor. | |

## I.  INTRODUCTION

Gen Con LLC, the debtor-in-possession ("Debtor" or "Gen Con"), by and through

counsel, Shelly Crocker and Crocker Kuno PLLC, files this memorandum in support of

confirmation of its Chapter 11 Plan of Reorganization ("Plan").  The Debtor's Plan provides

for the contribution of cash on hand and future profits until the pre-petition debts of the Debtor

are paid in full with interest at a healthy five percent rate.  The Debtor estimates that general

unsecured creditors will be paid in full by October of 2012 and that the plan will be complete in

October of 2013.   Every voting class has voted to accept the Plan as proposed.  Indeed, only one

creditor, albeit a large one, voted against the Plan.  Confirmation will allow Gen Con to continue

to employ people and to offer an annual convention that has been going on for more than 40

years.

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

## II. PLAN OBJECTIONS & AMENDMENTS

The Debtor's Amended Plan dated December 4, 2008, accompanied by the Debtor's First Amended Disclosure Statement, was transmitted to creditors and equity security holders. Confirmation is supported factually by the concurrent Declaration of Adrian Swartout in Support of Plan Confirmation.

Objections to the Plan were filed by LucasFilm Ltd, Gen Con Acquisition Group as the assignee of LGC Associates, LLC's debt, and Robert Callender, Jr., executor of the estate of Robert J. Callender, Sr. and Barbara Callender, as successor in interest to ISSG, LLC. The objections are summarized below, along with a response to the objection by Robert Callender, Jr.. The remainder of the Debtor's responses to the objections is included in Section III, below.

LucasFilm filed an objection to the plan on the basis that its claim is being treated unequally in violation of Section 1123(a)(4), that the plan is discriminatory, unfair, and inequitable in violation of Section 1129(b)(1), that the plan is not in the best interest of creditors as required by Section 1129(a)(7)(A)(ii), and that the plan is not feasible under 1129(a)(11).

Gen Con Acquisition Group filed an objection to the plan on the basis that the plan is proposed in bad faith under Section 1129(a)(3); that the settlement of insider avoidance actions violates 1123(b)(3)(A), 1129(a)(1), and Bankruptcy Rule 9019; and that the Plan is not in the best interest of creditors as required by Section 1129(a)(7).

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

The Estate of Callender filed an objection to the plan asserting that the Debtor's plan should not be confirmed because the Estate of Callender's claim is not included in the Amended Plan and because the Estate of Callender did not receive notice of the bankruptcy filing or any documentation pertaining to the Chapter 11 case.

The Estate of Callender's claim is included in the Debtor's Plan. The Estate of Callender is asserting ownership of the claim of ISSG. First Private Bank and Trust has also asserted ownership of ISSG's claim, going so far as to file a collection suit against Gen Con in late 2007. See Disclosure Statement at 7. First Private Bank and Trust represented a number of times through sworn declarations that it owned the debt and provided Debtor's counsel with an Accounts Receivable Purchase Agreement signed by Robert Callender, Sr. on behalf of ISSG apparently transferring the debt from ISSG to First Private Bank and Trust. The debt is included in the Debtor's schedules and Plan as a debt owed to First Private Bank and Trust in the amount of $74,250.00. The Estate's attorney has represented to Debtor's counsel orally that the claim was the subject of a settlement between the parties in May of 2008, which transferred the debt back to the Estate of Callender. If this is the case, the owner of the debt was properly served, and the Estate of Callender has been excluded based on its failure to file a proof of claim or a claim transfer, not because of any defect in the Debtor's notifications. The Estate of Callender's objection to the Debtor's Plan confirmation should be denied.

//////////

//////////

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 3

CROCKER KUNO pllc

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

### III.     DISCUSSION

**A.     The Plan Satisfies the Confirmation Requirements of Section 1129(a) of the Bankruptcy Code.**

Section 1129(a) of the Code, 11 U.S.C. §§ 101 et. seq., provides that a court shall

confirm a plan only if all of the requirements of Bankruptcy Code § 1129(a) are met.

**1.     The Plan Complies with Title 11, as Required by Section 1129(a)(1).**

Section 1129(a)(1) requires that a plan comply with "the applicable provisions of this

title."  The applicable provisions include Bankruptcy Code §§ 1122 and 1123, which govern

the classification of claims and interests and the contents of a plan of reorganization.  See In

re Commercial Western Finance Corp., 761 F.2d 1329, 1338 (9th Cir. 1985) (two of the

applicable provisions are §§ 1123(a)(1) and 1122(a)); H.R. Rep. No. 595, 95th Cong., 1st

Sess. 412 (1977) ("Paragraph (1) requires that the plan comply with the applicable provisions

of Chapter 11, such as sections 1122 and 1123, governing classification and contents of a

plan").

**a.     The Plan Properly Classifies Claims and Interests as Required by Section 1122.**

Section 1122(a) provides that a plan may place a claim or an interest in a particular

class only if such claim or interest is substantially similar to other claims or interests in that

class.  "Such a requirement ensures that large claims of differing legal natures do not dictate

the other claims within a class." In re Elsinore Shore Associates, 91 B.R. 238, 256 (Bankr.

D.N.J. 1988).  Section 1122(b) provides that a plan may designate a separate class of

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 4

CROCKER  KUNO  PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

unsecured claims that are less than or reduced to an amount necessary and reasonable for administrative convenience.

The Debtor's Chapter 11 Plan (hereinafter the "Plan") has split unsecured claims into three classes: an administrative convenience class of claims less than $1,000, a general unsecured class, and a subordinated class of insider claims. Although LucasFilm objects to the classification of their claim, they provide no basis for treating it in any way different from other general unsecured claims. Unsecured claims held by insiders have been placed in a separate class by consent, and insider claims have been subordinated to the claims of general unsecured creditors. The Plan complies with Bankruptcy Code § 1122.

**b.      The Plan Complies with the Requirements of Section 1123.**

Section 1123 sets forth the mandatory and permissive contents of a plan. As demonstrated below, the Plan contains each of the mandatory provisions and several of the permissive provisions discussed in that section.

**(1)      Compliance with Section 1123(a).**

Section 1123(a)(1) of the Code requires that a plan designate classes of claims and interests, other than claims of a kind specified in Bankruptcy Code § 507(a)(1) (administrative expense claims), Bankruptcy Code § 507(a)(2) ("gap" period claims), and Bankruptcy Code § 507(a)(8) (tax claims). In accordance with this provision, the Plan does not classify claims of the type described in Bankruptcy Code § 507(a)(1), 507(a)(2), or 507(a)(8). The Plan classifies all other Claims and Interests in Classes 1 through 5, as designated in Articles 3-8. The Plan thus complies with Bankruptcy Code § 1123(a)(1).

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 5

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." Section 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." Articles 4-11 of the Plan provide which classes are impaired or unimpaired and set forth the treatment of each Class. The Plan thus complies with Bankruptcy Code § 1123(a)(2) and Bankruptcy Code § 1123(a)(3).

Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Articles 4-11of the Plan provide the same treatment for each Claim in the same class and therefore the Plan complies with Bankruptcy Code § 1123(a)(4).

LucasFilm incorrectly asserts that it is being treated unequally as compared to other Class 3 claimants because its claim is subject to a claims objection, which may result in a delay of disbursements on LucasFilm's claim. LucasFilm is considering treatment and payment to be the synonymous when they are not. Treatment for all Class 3 claimants is the same under the Plan, but the schedule of disbursements may not be. Each claim is treated the same way under the Plan: all claims are subject to the Plan's procedure for resolving contested claims contained in Article 11. Thus, if any claim is contested under the Plan, the holder of the claim will not receive its distributions until the objection is resolved. The claimant's pro rata distributions will be held in reserve during the pendency of the objection and will be

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

disbursed "as soon as practical after [the claim] becomes allowed." The Plan complies with Bankruptcy Code § 1123(a)(4).

Section 1123(a)(5) requires that a plan "provide adequate means for the plan's implementation," and sets forth several examples of such adequate means. Article 10 of the Plan specifically defines the means for implementing the Plan. The Plan provides for the Debtor's retention of necessary property of the estate while it generates sufficient future profits to pay off the claims of pre-petition creditors. The Plan also provides for the Debtor's distribution of some of the Debtor's cash on hand to creditors. Consequently, the Plan satisfies the requirements of Bankruptcy Code § 1123(a)(5).

Section 1123(a)(7) requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such person. The Debtor in this case is a manager-managed limited liability corporation. Under the Plan, Adrian Swartout, the current President of the Debtor, becomes the manager and CEO of the Debtor and is vested with the power to select other officers. The only sort of trustee or director that will be appointed under the plan are members of the Advisory Committee, who will oversee the Debtor's reorganization and compliance with the Plan. The members of the Advisory Committee will be holders of Class 3 Claims and will have the ability to review the Debtor's books and consult with the Debtor on the replacement of Adrian Swartout as CEO/Manager and on certain other Major Decisions as they are defined in the Debtor's Amended LLC Agreement. The terms of the LLC amendment have resulted from

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

extensive negotiations between the Debtor, equity-holders, and the Unsecured Creditors'
Committee, resulting in a fair method for the selection of officers, directors, and trustees.  The
Plan is consistent with the interests of creditors and equity-holders and so satisfies the
requirements of Bankruptcy Code § 1123(a)(7).

(2)       <strong>Compliance with Section 1123(b).</strong>

Section 1123(b) of the Code describes certain permissive plan provisions.  The Plan
contains some of these permissive plan provisions, including provisions of the nature
described in §1123(b)(1) – (3), as well as a number of additional, appropriate provisions that
are consistent with the applicable provisions of the Bankruptcy Code § 1123(b)(6).  The Plan
complies with Bankruptcy Code § 1122 and with the mandatory and permissive provisions of
Bankruptcy Code § 1123.  Accordingly, the Plan also satisfies the requirements of Bankruptcy
Code § 1129(a)(1), which requires that a plan comply with the applicable provisions of the
Bankruptcy Code.

Under the Plan, the Debtor proposes to release any potential Avoidance Actions,
including those against insiders.  Settlement of the insider claims is fair and equitable to the
estate.  To determine wither a settlement is fair and equitable, the court should consider the
following factors:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be
> encountered in the matter of collection; (c) the complexity of the litigation involved,
> and the expense, inconvenience and delay necessarily attending it; [and] (d) the
> paramount interest of the creditors and a proper deference to their reasonable views…

Arden v. Motel Partners (In re Arden), 176 F.3d 1226, 1228 (9th Cir. 1999), citing Martin v.
Kane (In re A & C Properties), 784 F.2d 1377, 1381 (9th Cir. 1986).

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Settlement of the insider claims is fair and equitable to the estate. Debtor's counsel, the Official Unsecured Creditors' Committee, and the Creditors' Committee's financial officer examined the Debtor's transfers and determined that subordination of the insider claims was sufficient compensation for the waiver of avoidance actions against them. Swartout Decl., ¶ 16-17.

The probability of success in a significant percentage of the litigation is unsure as there are a number of applicable defenses available to the defendants. Setoffs are not recoverable as a preference. See, e.g., Braniff Airways Inc. v. Exxon Co. U.S.A., 814 F.2d 1030, 1034 (5th Cir. 1987). A significant percentage of the insider transfers were earmarked for the payment of specific debts, as Gen Con, Hidden City Games, and Off The Grid invoiced and paid each other each other for share of bills for things like rent, internet service, and labor. There is a high possibility that such inter-company transfers are unrecoverable as preferences under the earmarking doctrine or as fraudulent transfers because the value provided in exchange was reasonably equivalent.

Moreover, there are significant difficulties in collection. Swartout Decl., ¶ 16. Peter Adkison, having invested his assets in Gen Con and his other businesses, has very little in the way of assets that would be recoverable. Off The Grid has very few assets that would be recoverable. Hidden City Games did receive $15,000,000 in venture capital last fall, but has used that money to fund the development of a website. Hidden City Games recently laid off a significant percentage of their employees and is yet to have a profitable month, so recovery

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 9

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG   Doc 141   Filed 01/06/09   Ent. 01/06/09 22:37:59   Pg. 9 of 22

from current assets or the future profits of Hidden City Games appears unlikely and highly speculative.

The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it weigh in favor of the settlement. To collect on the claims, the Debtor would have to, at minimum, hire a forensic accountant to review the Debtor's books for the relevant years and pay counsel a significant fee in order to prosecute the claims to judgement and then more fees in order to attempt to collect the judgements obtained. These funds would either come out of the Debtor's operating fund, which could undercapitalize the Debtor and reduce the Debtor's future profits (and payments to creditors) or out of money that would otherwise be paid to creditors. The Debtor, Unsecured Creditors' Committee, and the Creditors' Committees' financial officer do not believe that money could be obtained from the prosecution of such claims faster, or with more certainty, than can be obtained from the Debtor's proposed Plan.

### 2. The Proponent Has Complied with Title 11 as Required by Section 1129(a)(2).

Section 1129(a)(2) requires that a plan's proponent comply with the applicable provisions of Title 11. The principal purpose of Bankruptcy Code § 1129(a)(2) is to ensure that the proponent has complied with the requirements of Bankruptcy Code § 1125 in soliciting acceptances to the Plan. 5 Collier on Bankruptcy, ¶1129.02[2] at 1129-21 (15th ed. 1993); See In re Michelson, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Reassessing the adequacy of disclosure from the vantage of the confirmation hearing is an efficient safeguard of the integrity of the reorganization process").

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 10

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Section 1125(b) provides that a proponent may not solicit acceptances of its plan unless, at the time of or before the solicitation, copies of the plan, and court-approved disclosure statement are transmitted to the solicitee.

The Debtor and their professionals consulted interested parties as to the Disclosure Statement and the possible terms of a Plan but did not solicit acceptances of the Debtor's Plan until after the Disclosure Statement was sent pursuant to Bankruptcy Court order.  Pursuant to Federal Rule of Bankruptcy Procedure 3017(d) and this Court's order approving the Disclosure Statement, the Debtor concurrently provided copies of the Amended Plan and the Amended Disclosure Statement to all holders of Claims and also provided Ballots to all holders of impaired Claims.  The Disclosure Statement contained adequate information pursuant to section 1125(b) of the Code  and was transmitted pursuant to the procedures set forth in section 1125(f) and this Court's orders.  Therefore, the Debtor has complied with Bankruptcy Code § 1129(a)(2).

> 3.    **In Accordance with Section 1129(a)(3), the Proponent Has Proposed the Plan in Good Faith and not by any Means Forbidden by Law.**

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law."  Although the term "good faith" is not defined by the Bankruptcy Code, a plan is considered to be proposed in good faith if it is "intended to achieve a result consistent with the objectives of the Bankruptcy Code." Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1074 (9th Cir. 2002), citing Ryan v. Loui (In re Corey), 892 F.2d 829, 835 (9th Cir. 1989), cert. denied sub nom., Kulalani Ltd. v. Corey, 498 U.S. 815, 111 S. Ct. 56 (1990).    Under Bankruptcy Code § 1129(a)(3), the Court

CROCKER  KUNO  pllc
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

must assess whether the Plan evidences fundamental fairness in dealing with the Debtor's creditors based on the totality of the circumstances. Id.

The Debtor's Plan has been proposed in good faith. The central purpose of the Chapter 11 is to facilitate the reorganization of debtors. Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 128 S. Ct. 2326, 2331 (2008). This case is exactly the type of situation for which Chapter 11 reorganization was designed. The Debtor, a company with a strong business operating the Gen Con Indy event, became insolvent due to a wildly unprofitable expansion outside of its core business area. Instead of liquidating itself to pay a series of judgments, the Debtor entered bankruptcy, created a Plan to repay 100 percent of the claims owed to creditors, and hopes to repay its debts to pre-petition creditors over the next five years and emerge from bankruptcy as a profitable enterprise. Jobs were saved, and a four day event enjoyed by around thirty thousand people each year will survive. Swartout Decl., ¶ 15.

The Debtor actively negotiated the Plan terms with the Creditors' Committee and altered much of its original Plan to accommodate the suggestions, concerns, and requests of the Committee. The proposed Plan complies with the most fundamental goals of the bankruptcy process: it provides a method for maximizing the value of the estate and reorganizing the Debtor by contributing the Debtor's profits until all Unsecured Creditor Claims are paid in full and with interest. Moreover, it treats all creditors fairly. The Debtor has proposed a Plan that meets the requirements of the Code and is economically and operationally feasible.

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 12

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Gen Con Acquisition Group and LucasFilm have objected to the plan and asserted that the Debtor's Plan proposal lacks good faith because: the plan is based on insider interests, the plan does not require payment to creditors, the plan's provision for the assignment of servers to Hidden City Games, the lack of effective default provisions, the Debtor's pre- and post-petition inability to turn over the Make-A-Wish auction proceeds, and the Debtor's refusal to consider Acquisition's offer.

None of these concerns are significant enough for the totality of the circumstances to weigh in favor of a bad faith finding. The central purpose of the Plan is to reorganize the Debtor and repay all pre-petition claims. The Plan requires repayment of all creditor claims by its terms. "The first payment will be due April 1, 2009, and payments will be due every (6) months thereafter until paid in full." Plan, Article 6.1.

The server leases transferred to Hidden City Games do not contain Gen Con's proprietary software and have never been used by Gen Con. Contrary to Gen Con Acquisition Group's assertion that the situation surrounding the transfer was not disclosed in the disclosure statement, the transfers were properly disclosed. "One lease, with outstanding payments of around $7,500, is entirely for Hidden City Games equipment and will be assumed and assigned to Hidden City Games." Disclosure Statement at 17. Assignment of the lease relieves the Debtor of an unnecessary liability.

Effective default provisions exist. The payment structure and default provisions were negotiated by the Debtor and the Creditors' Committee, and structured to allow the Debtor some flexibility to adjust payments up or down according to the profitability of Gen Con

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 13

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 141    Filed 01/06/09    Ent. 01/06/09 22:37:59    Pg. 13 of 22

Indy.  Under the Plan and the Debtor's amended LLC Agreement, the Debtor must make payments to the extent the Debtor has the funds to do so.  The Debtor is required to provide all unpaid creditors and the Advisory Committee with financial and cash flow statements and consult with the Advisory Board about its funding levels and plan payments.  These requirements, coupled with the Debtor's fiduciary duties to its creditors, provide effective remedies in the event of a default.

The Debtor's inability to pay its debt to Make-A-Wish was not in bad faith, as explained in Ms. Swartout's declaration.  Gen Con would have been unable to pay basic operating expenses and gone out of business if it had paid the Make-A-Wish debt pre-petition.  Gen Con made every effort to pay the Make-A-Wish.  Gen Con was advised by counsel that disbursement on the eve of the petition would be a preference.  Gen Con determined that the best course of action would be to make Make-A-Wish a separate class of creditor and provide for Make-A-Wish's immediate payment in the Plan.  Swartout Decl., ¶ 15.

In addition, the Debtor has given due consideration to the offer presented by Gen Con Acquisition Group; it has determined that the offer is not in the creditors' best interest.  As explained more fully in Ms. Swartout's declaration (pp. 6-8), the Debtor received several offer letters, signed only by counsel, that did not reveal the true parties in interest or the source of the purported funds needed to finance the offers.  Nevertheless, the Debtor promptly analyzed the offers and forwarded them to the Committee.  Swartout Decl., ¶ 18, Exhibit A.

Several deficiencies with the Gen Con Acquisition proposal are noted by Ms. Swartout, including its proposed management and its failure to account for funds sufficient to

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 14

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Indy.  Under the Plan and the Debtor's amended LLC Agreement, the Debtor must make payments to the extent the Debtor has the funds to do so.  The Debtor is required to provide all unpaid creditors and the Advisory Committee with financial and cash flow statements and consult with the Advisory Board about its funding levels and plan payments.  These requirements, coupled with the Debtor's fiduciary duties to its creditors, provide effective remedies in the event of a default.

The Debtor's inability to pay its debt to Make-A-Wish was not in bad faith, as explained in Ms. Swartout's declaration.  Gen Con would have been unable to pay basic operating expenses and gone out of business if it had paid the Make-A-Wish debt pre-petition.  Gen Con made every effort to pay the Make-A-Wish.  Gen Con was advised by counsel that disbursement on the eve of the petition would be a preference.  Gen Con determined that the best course of action would be to make Make-A-Wish a separate class of creditor and provide for Make-A-Wish's immediate payment in the Plan.  Swartout Decl., ¶ 15.

In addition, the Debtor has given due consideration to the offer presented by Gen Con Acquisition Group; it has determined that the offer is not in the creditors' best interest.  As explained more fully in Ms. Swartout's declaration (pp. 6-8), the Debtor received several offer letters, signed only by counsel, that did not reveal the true parties in interest or the source of the purported funds needed to finance the offers.  Nevertheless, the Debtor promptly analyzed the offers and forwarded them to the Committee.  Swartout Decl., ¶ 18, Exhibit A.

Several deficiencies with the Gen Con Acquisition proposal are noted by Ms. Swartout, including its proposed management and its failure to account for funds sufficient to

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 14

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Indy.  Under the Plan and the Debtor's amended LLC Agreement, the Debtor must make payments to the extent the Debtor has the funds to do so.  The Debtor is required to provide all unpaid creditors and the Advisory Committee with financial and cash flow statements and consult with the Advisory Board about its funding levels and plan payments.  These requirements, coupled with the Debtor's fiduciary duties to its creditors, provide effective remedies in the event of a default.

The Debtor's inability to pay its debt to Make-A-Wish was not in bad faith, as explained in Ms. Swartout's declaration.  Gen Con would have been unable to pay basic operating expenses and gone out of business if it had paid the Make-A-Wish debt pre-petition.  Gen Con made every effort to pay the Make-A-Wish.  Gen Con was advised by counsel that disbursement on the eve of the petition would be a preference.  Gen Con determined that the best course of action would be to make Make-A-Wish a separate class of creditor and provide for Make-A-Wish's immediate payment in the Plan.  Swartout Decl., ¶ 15.

In addition, the Debtor has given due consideration to the offer presented by Gen Con Acquisition Group; it has determined that the offer is not in the creditors' best interest.  As explained more fully in Ms. Swartout's declaration (pp. 6-8), the Debtor received several offer letters, signed only by counsel, that did not reveal the true parties in interest or the source of the purported funds needed to finance the offers.  Nevertheless, the Debtor promptly analyzed the offers and forwarded them to the Committee.  Swartout Decl., ¶ 18, Exhibit A.

Several deficiencies with the Gen Con Acquisition proposal are noted by Ms. Swartout, including its proposed management and its failure to account for funds sufficient to

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 14

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

pay all potential claims. Most importantly, the Debtor points out that a delay of confirmation at this time of year could be extremely harmful to the Debtor. Swartout Decl., ¶ 23. Exhibitors will be sending in their first deposits in short order, and planning for Gen Con Indy 2009 is well under way. Rather than risk losing the opportunity to pay creditors in full, Gen Con has continued to focus its efforts on conducting operations and obtaining confirmation of the proposed plan of reorganization.

### 4. All Payments Have Been Properly Disclosed as Required by Section 1129(a)(4).

Section 1129(a)(4) is directed primarily at policing the award and payment of professional fees from the estate in chapter 11 cases. See 5 Collier on Bankruptcy, ¶ 1129.02[4] at 1129-31 (15th ed. 1993) ("section 1129(a)(4) protects the integrity of the reorganization process by assuring creditors that payments from the debtor's estate will be subject to court review"). All pre-confirmation fees and expenses incurred by professionals in this Chapter 11 case will be subject to the final approval of this Court upon review of the applications for fees and expenses that all professionals are required to file under Bankruptcy Code § 330. No fees have been paid during the case. Article 2 of the Plan provides for payment of allowed administrative expense claims, and, along with Article 11, provides a mechanism for dealing with contested claims.

### 5. The Identity and Affiliation of All Individuals Proposed to Serve as Post-confirmation Directors, Officers, or Voting Trustees Has Been Disclosed Section 1129(a)(5).

Section 1129(a)(5)(A) requires that the plan proponent disclose the identity and affiliations of all individuals proposed to serve as officers, directors, or voting trustees of the

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

debtor, plus affiliates of the debtor participating in a joint plan with the debtor or successors to the debtor under a plan, and additionally, that all such appointments be consistent with the interests of creditors, equity security holders, and public policy. At plan confirmation, Adrian Swartout, the Debtor's current President, will become CEO and Manager of the LLC pursuant to the LLC Amendment and Employment Agreement attached as Exhibits 3 and 4 to the Disclosure Statement.

Ms. Swartout's appointment is consistent with the interests of creditors, equity security holders, and public policy. Under Ms. Swartout's leadership, this year was Gen Con's first profitable year since 2005. Ms. Swartout is confident that she can operate the Debtor with sufficient profitability to fund a plan, Swartout Decl., ¶13, and the Unsecured Creditor's Committee and the equity security holders have indicated their support for Ms. Swartout's appointment as CEO and Manager.

Section 1129(a)(5)(B) requires the disclosure of the compensation of any insider that will be employed or retained by the reorganized debtor. Adrian Swartout's compensation and full employment contract have been disclosed in all their detail. Disclosure Statement at 11. Her annual compensation will begin at $120,000 and may be annually adjusted subject to the approval of the Advisory Board. She will be entitled to tuition reimbursement and other standard and customary benefits. Ms. Swartout will also receive membership units in the Reorganized Debtor worth 20 percent of the company upon entry into the Employment Agreement, subject to disgorgement if she is terminated before 2012.

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

**6.     Section 1129(a)(6) Does Not Apply to the Plan.**

Section 1129(a)(6) requires that any regulatory commission with jurisdiction over the rates of a debtor approve any rate changes in a plan. This section is inapplicable to the Plan because the Debtor is not subject to the jurisdiction of any rate-setting regulatory commission.

**7.     The Plan Satisfies the "Best Interests of Creditors" Test of Section 1129(a)(7).**

The "best interests of creditors" test set forth in Bankruptcy Code § 1129(a)(7) requires the proponent of a plan to demonstrate that, with respect to each impaired class of claims or interests, the holder of each claim or interest in such class has either accepted the plan or will retain or receive under the plan property of a value as of the effective date of the plan that is not less than the amount that such holder would receive or retain if the debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. While not all holders of claims have accepted the Plan here, each holder will receive at least as much as it would receive in a Chapter 7 liquidation. According to the Debtor's liquidation analysis, attached to the Disclosure Statement as Exhibit E, a Chapter 7 liquidation will net the creditors approximately 7% of their claims, while the Debtor's plan offers payment of 100% of creditors' Allowed Claims. Under the Debtor's Plan, the Debtor will pay significantly more to creditors than could otherwise be achieved in a Chapter 7 liquidation and distribution.

Gen Con Acquisition Group and LucasFilm further object to the Debtor's Plan on the grounds that it is not in the best interest of the creditors as required by Section 1129(a)(7) because it improperly valued Hidden City Games stock, software, and computers and failed to

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

include consideration of Gen Con Acquisition Group's offer. The Debtor properly valued its assets and performed its liquidation analysis correctly.

The Hidden City Games shares are restricted and may not be sold or transferred absent the approval of Hidden City Games' board. Moreover, Hidden City Games is a start-up technology company that has never been profitable, and it is unlikely Gen Con could find a buyer willing to purchase the stock. It is unlikely that the Debtor will be able to run the double gauntlet of finding a party who is both willing to pay money for the shares and able to obtain the Hidden City Games' board's approval of the transfer. For this reason, the Debtor valued the stock at $0.00.

The software, a registration system for Gen Con events, has no value to anyone save Gen Con and would be worthless in a liquidation. It is over five years old, written in an archaic computer language, and is customized to suit only Gen Con's needs. Conversion to a turnkey solution would require an investment significant enough to make the software worthless in a liquidation.

Finally, Gen Con did not consider Gen Con Acquisition Group's offer in its liquidation analysis because the offer is not available in a liquidation[1], and even if the offer was available, Gen Con's Plan is in the best interest of creditors because it provides for the payment of 100% of Allowed Claims at their present value. Section 20 of the Gen Con Acquisition Group offer indicates that in order to accept the offer Gen Con must maintain its

---

[1] There is a question as to whether the offer is available at all, as page 7 of the offer indicates it must be accepted on or before 5:00 p.m. on December 19, 2008.

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 18

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

business and property consistent with its past practices, a situation not consistent with a Chapter 7 liquidation scenario.

**8.      Section 1129(a)(8) is Satisfied.**

Section 1129(a)(8) requires that, with respect to each class of Claims, such class has accepted the Plan or is not impaired under the Plan.  As reflected in the Ballot Summary on file with the Court, every voting class has voted to accept the Plan.  For the sake of argument, the Debtor assumed the Court would estimate LucasFilm's claim at the full amount of its proof of claim, even though it disputes that amount and has filed a claim objection.  Using the highest dissenting claim amount, almost 80 percent in amount and 92 percent in number of the unsecured claims in Class 3 voted in favor of the Plan, and the subordinated insider unsecured claims voted 100 percent in favor.  Clearly, the Creditors in this case support confirmation of the Plan, and the requirement of 11 U.S.C. § 1129(a)(8) is met.

**9.      The Plan Complies with Section 1129(a)(9) as to Administrative and Priority Claims.**

Section 1129(a)(9) provides guidelines for the treatment of claims entitled to priority under Bankruptcy Code §§ 507(a)(1) -(8).  Under the Plan, holders of Allowed Administrative Expense Claims entitled to priority under Bankruptcy Code § 507(a)(1) and (a)(2) and holders of Allowed Priority Non-tax Claims shall, on the later of the Effective Date or the date on which such Claim becomes an Allowed Claim, receive Cash equal to the Allowed amount of such Claim, unless the holder of any such Claim agrees to less favorable treatment.  Allowed Priority Tax Claims will receive deferred cash payments equal to the value of their claims at the time of confirmation over a period of five years as provided in Section 1129(a)(9)(C).

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 19

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

**10.    Section 1129(a)(10) Is Satisfied Because Impaired Class 3 has Voted to Accept the Plan.**

Section 1129(a)(10) provides that if one or more classes of claims are impaired under a plan, at least one must have accepted the plan, without including any votes of insiders.  The Ballot Summary on file with the Court reveals that impaired Class 3 voted to accept the Plan.

**11.    The Plan is Feasible as Required by Section 1129(a)(11) Because Confirmation of the Plan is Not Likely to Be Followed by Liquidation or the Need for Further Financial Reorganization.**

Section 1129(a)(11) requires the Court to find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization of the debtor."  The purpose of section 1129 (a)(11) is to prevent confirmation of "visionary schemes" which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.  In re Pizza of Haw., Inc., 761 F.2d 1374, 1382 (9th Cir. Haw. 1985).  The feasibility standard is whether the plan offers a reasonable assurance of success, and success need not be guaranteed.  Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988); In re Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985).

The Plan is feasible and has a reasonable assurance of success.  Swartout Decl., ¶ 13. The Plan provides for the distribution of cash on hand and future profits of the Debtor.  The Debtor's projections of profits are modest and are based on Gen Con Indy's actual returns for the last six years.  Gen Con Indy has exhibited a revenue growth rate of nine to thirteen percent each year for the last five years, and the Debtor's projections included in the plan estimate a growth rate of only three percent.  Swartout Decl., ¶ 11.  The net income and the

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 20

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 141    Filed 01/06/09    Ent. 01/06/09 22:37:59    Pg. 20 of 22

Debtor's current cash position fund the Plan, which should complete payment of general unsecured claims by the end of 2012. Disclosure Statement at Exhibit D. The ability to adjust payments down in lean years and up in highly profitable years, proposed by the Creditors' Committee, and the oversight and assistance of the Advisory Committee will aid the Debtor in a successful reorganization. This modest Plan is feasible and there is virtually no likelihood that the Debtor will need future reorganization or liquidation. Swartout Decl., ¶ 13.

> **12.    Section 1129(a)(12) is Satisfied Because the Plan Appropriately Provides for all Fees under 28 U.S.C. Section 1930.**

All fees payable under 28 U.S.C. § 1930 must have been paid or the plan must provide for payment on the Effective Date of the plan. 11 U.S.C. § 1129(a)(12). All fees due and owing pursuant to 28 U.S.C. § 1930 have either been paid to the clerk of the Bankruptcy Court or to the Office of the United States Trustee, and the Confirmation Order specifically requires that all fees payable under 28 U.S.C. § 1930 be paid by the Effective Date or as soon thereafter as is practical.

**B.    The Plan Satisfies the Additional Confirmation Requirements Set Forth in Section 1129(b) and Should Be Confirmed over the Objections.**

LucasFilm has objected to confirmation of the plan on the grounds that the plan unfairly discriminates against them. Section 1129(b)(1)'s requirement that the plan "not discriminate unfairly, and be fair and equitable, with respect to each class of claim or interests that is impaired under, and has not accepted, the plan" is applicable only when 1129(a)(8) has not been met and the Plan proponent is required to move forward under the cramdown provisions under 1129(b), and in such a case the provision only applies to those claims in

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 21

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

classes which *have not accepted the plan*. Neither of those situations exist here in regard to LucasFilm: the plan has been approved under 1129(a)(8) and LucasFilm is a member of Class 3, which voted in favor of the plan.

## IV. CONCLUSION

The Plan is consistent with the goals and policies of Chapter 11 of the Bankruptcy Code. As set forth above, the Plan satisfies each and every confirmation standard of Bankruptcy Code § 1129.

Moreover, the creditors have voted in favor of the plan. With the exception of LucasFilm and Gen Con Acquisition Group, no creditor voted to reject the Plan. The creditors have chosen to approve the Plan with the full disclosure that the insider claims would be waived and that they would receive payment of 100% of their claims over the next five years. Their vote is entitled to deference.

The Debtor has provided evidence of its good faith and the feasibility of the Plan and has shown why each objection should be overruled. The Debtor therefore respectfully requests confirmation of its Plan as proposed.

DATED this 6th day of January 2009.

CROCKER KUNO PLLC


By____*/s/ Chris Dale*_____
      Shelly Crocker, WSBA #21232
      Chris Dale, WSBA #40788
Attorneys for Debtor

MEMORANDUM IN SUPPORT OF PLAN CONFIRMATION - 22

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 141    Filed 01/06/09    Ent. 01/06/09 22:37:59    Pg. 22 of 22