The Honorable Thomas T. Glover
Chapter 11
Hearing Date: January 9, 2009
Hearing Time: 9:30 a.m.
Hearing Location: Seattle, WA
**Response Date: December 30, 2008**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re<br><br>GEN CON LLC,<br><br>                        Debtor. | Bankruptcy No. 08-10844-TTG<br><br>DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF PLAN CONFIRMATION |

I, ADRIAN SWARTOUT, declare as follows:

1. I am the President of Gen Con, LLC. I am making this declaration from my personal knowledge. I am over the age of 18 and I am competent to testify to the contents of this Declaration.

2. On February 15, 2008, (the "Petition Date"), Gen Con, LLC ("Gen Con") filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). Gen Con continues to manage and operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. I signed the petition, and have been responsible for all aspects of

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -1-

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 1 of 8

operating the Debtor since prior to the petition date, pursuant to authority delegated to me by Gen Con's owner, Peter Adkison.

3. No trustee or examiner has been appointed in the Chapter 11 case. A creditors' committee has been appointed and has been active in working with the Debtor including advising on the proposed Plan of Reorganization.

4. Gen Con was founded in May 2002 by the founder and former CEO of Wizards of the Coast. Gen Con produces the largest consumer fantasy, sci-fi and adventure game convention in North America. Its operations include Gen Con Indy and licensed Gen Con shows in Europe and Asia. Gen Con is a consumer and trade experience dedicated to the gaming culture and community.

5. At the time of its founding, Gen Con acquired the U.S. gaming convention that had been previously held in Milwaukee, Wisconsin, as well as the national brand that had enjoyed licensed shows in the United Kingdom and Barcelona, Spain. In 2003, Gen Con moved the U.S. event to Indianapolis, Indiana.

6. <u>Good Faith</u>. As President of Gen Con, I have been in charge of its operations since September 2007, shortly after Star Wars Celebration IV. By that time, it was apparent that Peter Adkison, the owner of Gen Con, its CEO, and my boss, had turned his attention to developing products for Hidden City Games, and that someone needed to attend to Gen Con if we were going to survive. I have worked for Gen Con for three years, and I have close professional relationships with our employees, vendors, exhibitors and attendees. I am very committed to the survival of this community and this institution.

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -2-

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 2 of 8

7. Prior to filing bankruptcy, we engaged a broker to help us find buyers, and I spent several months courting potential buyers for the company, but no reasonable offer was found.

8. Because we were unable to pay debts from the Star Wars conference, we were being sued by several vendors. I consulted first with our corporate counsel at Davis Wright, and was advised that Chapter 11 might be an option for the company in the face of multiple lawsuits. Because they also represented Hidden City Games at that time, Davis Wright referred me to outside counsel. From the beginning, I have understood the duties we have to our creditors to obtain the best possible value for Gen Con's assets.

9. Although I have maintained a good working relationship with Mr. Adkison, and have consulted him regularly on certain aspects of operations and innovations for Gen Con Indy, I have also exercised my own independent judgment throughout this Chapter 11 process. Mr. Adkison entrusted the company to me and delegated all his authority because he understood that Gen Con owed a fiduciary obligation to its creditors to pay them back, and because he believes I can carry out that duty. At all times throughout this case, I have respected and advanced our obligations to creditors (including Mr. Adkison and Hidden City Games).

10. After negotiations with the Gen Con Acquisition Group, LLC, ("GAG"), discussed further below, I firmly believe that the proposed Plan is a far better option for creditors than engaging in any business dealings with GAG. I have put my own name and career on the line to carry out this Plan, because it is in the creditors' best interest.

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -3-

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 3 of 8

11. <u>Feasibility</u>. Given Gen Con's historical growth over the last five years, our projections are not overly optimistic. In actuality, I believe they are modest. Gen Con Indy has exhibited a revenue growth rate of nine to 13 percent each year for the last five years. The projections for the next four years are only a three percent growth rate.

12. The projected increase in revenue is extremely modest compared to historical data. Moreover, the expense increases over time are not significant because revenues are scalable. The business does not need to generate significant additional expense to serve more attendees, exhibitors, and sponsors. The projected cash flow allows for enough cash to operate the business and gives us two months burn rate on hand at any time should cash flow be different than historical trends. Additionally, developments in technology will allow Gen Con to be more efficient and to be able to save money in various different areas resulting in a controlled and nominal increase in expenses over time.

13. I have been operating Gen Con for more than a year. In fact, the Chapter 11 process we undertook gave us some breathing space to ensure that we could cut costs and return our operations to profitability. We have been successful at doing so, and we can continue to operate profitably going forward and generate sufficient cash flow to repay our debts in full over time. The projections are based on a long history of actually operating, and I stand behind them.

14. <u>Make-a-Wish Foundation</u>. From the end of FY 2007 until filing the bankruptcy petition, we have known that we were essentially out of money. Our revenue generally builds through the year beginning in January or February, culminating in August

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -4-

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 4 of 8

with the Gen Con Indy show. I knew after Gen Con Indy 2007 that we would not survive if we made immediate payment to Make-a-Wish, but Gen Con always intended that Make-a-Wish and all other debts would eventually be paid in full.

16. I wanted to pay Make-a-Wish before filing Chapter 11, but I was advised that it could have been viewed as a preference. Instead, I decided it would be best if Make-a-Wish were rolled into the Chapter 11 and hopefully could be treated as a separate class of creditor and we would be given permission to pay them in full upon confirmation. It was one of the most difficult business decisions I have ever had to make, but it was for the greater good of all creditors. If Gen Con had closed its doors then we would have defaulted on over $3 million in debt. We were thrilled when the Court ordered us to pay Make-a-Wish last November, but we would not have deigned to ask for that relief had we not been in a position to propose a 100 percent plan and obtain the Creditor Committee's support.

16. <u>Avoidance Actions</u>. As I understand it, there aren't $10 million in avoidance actions. GAG is not taking into account the payments made by Hidden City Games to Gen Con in repayment of advances, nor the nature of the payments to Off the Grid. Moreover, I am familiar, in a general way, with the finances of the so-called insiders, and none of them have the wherewithal to pay significant funds to Gen Con, even if they had received avoidable transfers.

17. Along with Ann Eutsler, our CFO, I spent hours with Miles Stover, the Committee's financial advisor, going over the various transactions at the request of the Committee. My understanding is that the Committee concluded that the bankruptcy estate

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -5-

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 5 of 8

would not benefit from protracted litigation over the transfers, and that Mr. Stover will be available to testify as to that issue.

18. <u>Offer from Gen Con Acquisition Group ("GAG")</u>. I have received several versions of an offer from an attorney claiming to represent a newly-formed group of investors. Initially, I was not even told who the investors were, and no entity had been formed. Since mid-2007, I have been the officer of Gen Con with the primary responsibility for advancing potential sales of the company's assets, and thus I am familiar with the normal course of negotiations. Immediately upon receiving the first offer, one day before our disclosure statement was set for approval, I prepared an analysis of the offer for the Committee. A copy of my analysis, and our counsel's cover letter, is attached as Exhibit A.

19. I recently heard from a member of the purported investor group, and I was told that the funding for this deal originated with a company called RJM Acquisitions. When I researched this company on the internet, all I could find was entries related to lawsuits against them for pursuing collection actions. It appears that RJM Acquisitions is in the business of buying old debt and collecting on it. I had a conversation with a senior partner of RJM to discuss numerous elements of the business and their intentions. She repeatedly indicated they could not share any additional information about their company until we signed a non-disclosure agreement with them, that would also include an agreement not to speak with any other potential buyers. I understand that entry into such an agreement would violate my obligations to the existing creditors of Gen Con.

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -6-

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 6 of 8

20. I understand that GAG intends to install Anthony Galella as the management of Gen Con upon its acquisition. Mr. Galella is the former operator of a competing convention called Origins. I would not be willing to work for Mr. Galella, nor would most of my current staff. His track record speaks for itself: in 2002, when Mr. Adkison acquired Gen Con, its attendance was just over 21,000. At that time, Origins attendance was reported around 17,000. Origins has shrunk over time, losing both attendees and key exhibitors while Gen Con has continued to grow – even in a sagging economy. Numerous key companies no longer exhibit at Origins specifically because of issues with Mr. Galella.

21. GAG's offer to make a discounted cash payment to creditors might be attractive, but I'm not at all convinced this is a bona fide offer or that this anonymous group has the funding to support the offer. Under the latest version of the offer which was only sent to us on December 31, after it had been filed with the Court, the bi-annual payments are reduced by the percentage of creditors who accept the discounted payment. Additionally, creditors willing to subordinate under Gen Con's plan are unlikely to subordinate their claims in this scenario, which would add almost $450,000 to the unsecured debt load and lower the distribution percentage for current unsecured creditors.

22. Outside of the discounted cash payment option, GAG's revised proposal is exactly the same as they submitted before. It does include an upfront payment and slightly increased interest rate and is therefore a slightly better return than Gen Con's current plan, but the GAG plan carries with it an enormous amount of risk – significantly higher than the Gen Con plan and previously identified in my letter to the Committee analyzing the original offer.

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -7-

CROCKER KUNO PLLC

720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 7 of 8

23. The lateness of this offer is very suspect. The success of next year's show depends on Gen Con's ability to emerge from Chapter 11 as soon as possible. To delay or withdraw the existing Plan pretty much assures Gen Con's failure in 2009 and would likely result in a Chapter 7 liquidation. Additionally, current management and several key staff will resign immediately if Gen Con is forced to accept GAG's offer, further impacting the critical timeline for planning and executing key deadlines and deliverables. I just don't understand, if this is a legitimate offer from an accredited and well funded investor, why it was not presented months ago when there would have been time for appropriate due diligence and research into this acquisition group and the source of their funding thus enabling the committee and Gen Con to make the best choice for the creditors.

I declare under penalty of perjury of the laws of the United States and the state of Washington that the foregoing is true and correct.

DATED this 6th day of January 2009.

>	*/s/ Adrian Swartout*
>	ADRIAN SWARTOUT

DECLARATION OF ADRIAN SWARTOUT IN SUPPORT OF
PLAN CONFIRMATION -8-

CROCKER KUNO PLLC
720 Olive Way, Suite 1000
Seattle, WA 98101 - 1853
P) 206-624-9894
F) 206-624-8598

Case 08-10844-TTG    Doc 142    Filed 01/06/09    Ent. 01/06/09 22:41:32    Pg. 8 of 8